GRACE HART, Appellant, *v.* DUDLEY KLINE, Respondent.

No. 3337

September 9 1941.                    116 P.(2d) 672.

(Taber, J., dissenting in part).

*William S. Boyle* and *Thomas H. Grimm,* both of Reno, for Appellant.

*Morley Griswold* and *George L. Vargas,* both of Reno, for Respondent.

## OPINION

By the Court, DUCKER, C. J.:

Plaintiff brought this action to recover damages for personal injuries she sustained while riding as a guest in defendant's automobile, which he was driving at the time of the accident. Her causes of action were based on gross negligence and willful misconduct. When she closed her case defendant moved for a nonsuit, which was granted.

The salient facts are: That around ten or eleven o'clock on the night of February 10, 1940, plaintiff accepted an invitation from defendant to go with him for a ride·in his automobile. The car he was driving was a 1935 Packard coupe. They proceeded west from Reno about five miles from the city limits to the Pit Club, a resort situated on the Verdi-Reno highway, route No. 1, on the south side thereof. Route No. 1 is the main traveled highway extending easterly and westerly. The Southern Pacific Railroad tracks where the accident happened are located about one hundred yards south of route No. 1, and at that point parallel each other generally. The south Verdi road, which also extends east and west at the point where the accident happened, is about twenty-five feet south of the railroad tracks. The parties·were at the Pit Club for about an hour and a half, and during that time drank four to six scotch and sodas, two of those taken by defendant being what is called "doubles." An hour or so after midnight they left the Pit Club to return to Reno. Defendant drove across the railroad tracks on a connecting road to the south of Verdi and turned towards Reno. Plaintiff objected to their returning by this road on account, as she stated, of the night being snowy and the road muddy, slippery, a "very lonesome and desolate place." After going east about ten yards on this road defendant stopped the car, and backed it up

about forty yards, stopping on the road at a point west of the railroad crossing and about twenty-five feet south of the railroad tracks. They remained at this point a few minutes arguing, and then defendant said, "all right" in an angry tone and started the car forward, intending to go back over the railroad crossing and connecting road to route No. 1. From the point where he started to the crossing the road makes almost a U-turn and ascends to the crossing at an elevation of about three feet in the last twenty-five feet. It is about forty yards from that starting point to the crossing. The southerly set of railroad rails where they approach the railroad crossing on the east are on banks of earth about eighteen inches high, the rails being about seven inches high. Near this point a "few feet" from the southernmost rail are some rocks. Defendant failed to make the U-turn. The car left the road at the latter point striking the rocks and continued on until stopped by striking the southernmost rail of the tracks or embankment. Plaintiff also testified that when defendant started the car to go over the crossing, he turned it to the left with "great speed"; that when he ran into the rocks, she "sort of screamed, 'Good Heavens, stop'"; that when the car hit the rocks he continued to drive right over them and stepped on the gas and went into the mound of earth and onto the railroad tracks with terrific force. "* * * When he hit the rocks I lost my balance and before I could regain my balance I was hurled against the windshield and my head went through it." A further version was given by her on cross-examination as follows:

"A. After hitting the rocks, he continued on, stepped on the gas and we went right in here between the mound of earth and the railroad track with terrific force.

"Q. You continued right straight ahead to the railroad tracks? A. Yes, as if he tried to just plow right over the railroad tracks to get back into the connecting road.

"Q. And you stopped when you hit the railroad tracks, then, is that it, at that point? A. After hitting the rocks, we drove right over the rocks into the railroad tracks.

"Q. And when he hit the rocks, that is when you made the exclamation that you testified to yesterday? A. Yes.

"Q. And after you made that exclamation, then was when he hit the railroad tracks, is that right? A. Yes.

"Q. And all that at terrific speed? A. Yes, he stepped on the gas when he went into the railroad tracks.

"Q. Well, how far was that distance? A. Just a very few—just a few yards.

"Q. Just a few yards? A. Yes."

On redirect she supplemented the above by the following:

"Q. At what point then, did Mr. Kline, as you testify, step on the gas when he was over here in these rocks? A. After he hit the rocks and stopped him, he stepped on the gas to continue over the rocks and to plow over the railroad tracks.

"Q. What, if anything, then, did you say at that junction, when he pulled into the rocks? A. Told him, 'Good Heavens, stop the car and let me get out.' "

Immediately after the impact defendant backed the car through the rocks to the connecting road and drove back to the Pit Club. Plaintiff was injured about the head, and the car was damaged. Under these circumstances, we are to say whether the law required the submission of the case to the jury.

The Nevada vehicle guest statute (Stats. of Nevada 1933, ch. 34, p. 29, 30) provides in part:

"Any person who as a guest accepts a ride in any vehicle, moving upon any of the public highways of the State of Nevada, and while so riding as such guest receives or sustains an injury, shall have no right of recovery against the owner or driver or person responsible for the operation of such vehicle. * * *

"Nothing in this section contained shall be construed as relieving the owner or person responsible for the operation of a vehicle from liability for injury to or death of such guest proximately resulting from the intoxication, willful misconduct, or gross negligence of such owner, driver or person responsible for the operation of such vehicle."

The statute defines a guest as being a person who accepts a ride in any vehicle without giving compensation therefor. It places the burden upon plaintiff to establish that such intoxication, willful misconduct, or gross negligence was the proximate cause of such death or injury. Intoxication is not in issue.

■ Counsel for the parties have presented many authorities on gross negligence and willful misconduct. Gross negligence cannot be precisely defined. The best and most comprehensive definition of gross negligence, distinguishing it from ordinary negligence, and from a willful and intentional wrong, that we have been able to find, was given in Shaw v. Moore, 104 Vt. 529, 162 A. 373, 374, 86 A. L. R. 1139. It is the accepted definition of gross negligence in that state, and is as follows:

"Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence. Gross negligence is equivalent to the failure to exercise even a slight degree of care. It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. It is very great negligence, or the absence of slight diligence, or the want of even scant care. It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is, in gross

negligence, magnified to a higher degree as compared with that present in ordinary negligence. Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man. But it falls short of being such reckless disregard of probable consequences as is equivalent to a willful and intentional wrong. Ordinary and gross negligence differ in degree of inattention, while both differ in kind from willful and intentional conduct which is or ought to be known to have a tendency to injure."

The Vermont court adopted the above from the definition formulated by the supreme court in Altman v. Aronson, 231 Mass. 588, 121 N. E. 505, 4 A. L. R. 1185. As stated by that court, the definition is supported by the great weight of authority in other jurisdictions.

The trial judge was thoroughly conversant with the rule, as his oral opinion shows, and properly applied it to the facts in granting the nonsuit. As a matter of law the jury could not have legally found defendant guilty of either willful misconduct or gross negligence.

■■ The physical facts refute plaintiff's testimony as to the immediate happenings after the car left the road to such an extent as to render it valueless. Physical facts, which speak the truth unerringly, cannot be overcome by oral testimony. Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65. We have the testimony of plaintiff that the distance from where the car struck the rocks to the railroad track was a few yards. The evidence is that from the point where the car made its start from the standing position to the railroad embankment, the place of impact, is forty yards. An inspection of exhibit 1 discloses the distance from the point where the car left the road to the point of impact to be but a small portion of that distance. Physical facts demonstrate that defendant did not have sufficient time or opportunity to comply with plaintiff's request to stop and let her out. Defendant could not have

become apprehensive of danger until the car left the road, and in the short distance and almost split seconds given him in which to act, he could not have avoided the crash.  Keeping in mind that the gross negligence imputed to defendant is alleged to have occurred between the time the car left the road and after hitting the rocks, the element of time is further reduced, and the consequent inability of the driver to act further demonstrated.  The physical facts demonstrate that the events must have happened with almost as great rapidity as the successive thoughts of her mind, sudden realization of peril, followed by immediate injury.  It is improbable that a person thrown off balance and engaged in endeavoring to save herself from harm would be able to take account of the amount of pressure being exerted on the throttle.  Giving the testimony of plaintiff, to the effect that the car was traveling at great speed, a most conservative interpretation, and taking, for example, a speed of forty miles per hour, and also a liberal view of the distance from the point the car left the road to the point of impact, and placing such distance at thirty feet, then the time required for the car to travel said distance at said speed, would be about half a second, and it would require 128 feet to stop the car, traveling at forty miles per hour. Here defendant had about thirty feet in which to act. Stress is laid on the testimony that the rocks acted as an impediment to the speed and lengthened the elapsed time required to travel the approximate thirty feet from the time the car left the road to the point of impact. Again we have recourse to the physical facts.  Comparing the size of the rocks with other objects as they are disclosed in exhibit 1, we find the rocks not to be large boulders such as would materially block the path of the car, but they are of a size that a car with the power known to be possessed by a Packard coupe, traveling at a reasonably high speed, could pass over without an appreciable lessening of the speed.  What

does plaintiff say about this? "When he hit the rocks I lost my balance and before I could regain my balance I was hurled against the windshield and my head went through it." These were crowded moments. The car would "plow" through those rocks without requiring further acceleration than the speed of forty or more miles per hour. The defendant had no difficulty in backing the car through the rocks to the road.

Failing to stop and let plaintiff out in the fraction of a second involved, and applying the gas after hitting the rocks, are the dereliction and act relied on to establish willful misconduct or gross negligence. The circumstances do not sustain the proposition. Speed and distance traveled, the exigency of the situation all refute it.

The judgment of nonsuit should be affirmed, and it is so ordered.

ORR, J., I concur.

TABER, J., dissenting in part:

I think the trial court was right in taking the case from the jury on the issue of willful misconduct. 22 Cal. Law Rev. 119, 121; 2 Cal. Jur., 10 Year Supp., Automobiles, sec. 373, pp. 575–577. On the issue of gross negligence, however, it is my opinion that the case should have gone to the jury.

Section 8793 N. C. L. 1929, as amended (Stats. of Nev. 1939, ch. 36, p. 33), provides, in part, that a judgment of nonsuit may be entered by the court, upon motion of the defendant, when upon the trial the plaintiff fails to prove a sufficient case for the court or jury. If, on the evidence in this case, reasonable men could come to only one conclusion, namely, that plaintiff's injury was not the proximate result either of defendant's willful misconduct or gross negligence, his motion for nonsuit was properly granted. Crosman v. Southern Pac. Co., 44 Nev. 286, 194 P. 839; Blinn v. Hatton,

Mont., 114 P. (2d) 518. If, on the other hand, reasonable men could fairly conclude from the evidence that plaintiff's injury was the proximate result of defendant's willful misconduct or gross negligence, or both, then the case should not have been withdrawn from the jury. Weck v. Reno Traction Co., 38 Nev. 285, 149 P. 65. The burden was upon plaintiff to establish a prima facie case.

In considering the trial court's ruling granting the nonsuit, this court must take as proven every fact which the plaintiff's evidence tended to prove, and which was essential to her recovery, and give her the benefit of all legal presumptions arising from the evidence. Patchen v. Keeley, 19 Nev. 404, 14 P. 347; Fox v. Myers, 29 Nev. 169, 86 P. 793; Burch v. Southern Pacific Co., 32 Nev. 75, 104 P. 225, Ann. Cas. 1912B, 1166; McCafferty v. Flinn, 32 Nev. 269, 107 P. 225; Weck v. Reno Traction Co., supra; Crosman v. Southern Pacific Co., supra; Cann v. Williams Land & Livestock Co., 56 Nev. 242, 48 P. (2d) 887.

In Gough v. Smalley, 160 Wash. 193, 294 P. 1007, 1010, the court says: "In view of the many other facts with which the record bristles, were we the triers of the fact we would have no difficulty in reaching the conclusion that the evidence failed to establish gross negligence, but we are not here the triers of the fact. We are only permitted to determine whether there was any substantial evidence from which a reasonable inference might be drawn by the jury that the driver, Smalley, did not exercise even slight care, and we are convinced that a jury believing the witnesses we have quoted might have drawn such an inference." See, also, Wigmore on Evidence (3d ed.), vol. 9, pp. 304, 305; Reid v. Maryland Casualty Co., 5 Cir., 63 F. (2d) 10, 11; 64 C. J., Trial, secs. 1028, 1030.

If defendant, after negligently driving off the road, had been guilty of no further negligence, I would agree that plaintiff had not made out a prima facie case for

the jury. DeSimone v. Pedonti, 308 Mass. 373, 32 N. E. (2d) 612. But we have the positive testimony of plaintiff that when the car ran into the rocks she asked defendant to stop the car and let her out, but that instead of doing so, "he stepped on the gas to continue over the rocks and to plow over the railroad track." Thus defendant, having already negligently brought plaintiff, as well as himself, into a dangerous situation, increased the peril by a new and further act of negligence. This, in my opinion, was sufficient to carry the case to the jury on the question of gross negligence. White v. McVicker, 216 Iowa 90, 246 N. W. 385, 390.

My associates take the view that plaintiff's testimony relating to the happenings after the car left the road is refuted by the physical facts to such an extent as to render it valueless. The general rule that undisputed physical facts which speak the truth unerringly cannot be overcome by oral testimony is well settled in this state, as well as in other jurisdictions. Weck v. Reno Traction Co., supra; 20 Am. Jur. 1033, 1034, Evidence, sec. 1183. But, as stated in the last two sentences of said sec. 1183, "It is often said, however, that an extraordinary case is required to authorize the court to regard sworn testimony as manifestly impossible and untrue. So frequently do unlooked-for results attend the meeting of interacting forces that courts should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other."

The general rule, though recognized in the Weck case, was held to be inapplicable under the facts in that case. The court, however, gave an example to which the rule would be applicable [38 Nev. 285, 149 P. 67]: "If two engines had approached each other along a railway track at the rate of 25 miles an hour and were 400 feet apart, it could be told exactly how long it would have taken them to meet. In this supposed case we have two

fixed, positive facts to figure on, namely, the distance the engines are apart and the exact speed at which they are traveling. If a witness were to testify that it took two minutes for the two engines to collide, we could ascertain the correctness of his testimony by invoking the science of mathematics." In the present case we have no such fixed, positive facts to figure on; and where, as here, we are dealing with a motion for non-suit, the rule should be applied only when the physical facts so clearly contradict the oral testimony that reasonable minds could not accept it as the truth.

The majority opinion states that defendant did not have sufficient time or opportunity to comply with plaintiff's request to stop and let her out; it appears to be based upon the idea that by reason of the short distance from the road through the rocks to the track, and the speed of the car, the only reasonable conclusion is that the car, after leaving the road, went through the rocks and crashed into the railroad track or embankment in only a fraction of a second of time, and without being slowed up to any appreciable extent. This view, in my opinion, not only fails to give plaintiff's testimony the favorable consideration to which it is entitled on a motion for nonsuit, but also takes from the jury several questions of fact which properly should receive its consideration, for instance, whether the rocks may have slackened the speed of the car to an extent which would have enabled defendant to further decelerate its speed instead of accelerating it as testified by plaintiff. When asked at what point defendant stepped on the gas, plaintiff replied "After he hit the rocks and stopped him, he stepped on the gas to continue over the rocks and to plow over the railroad track." When considered with other testimony of plaintiff concerning the happenings after the car left the road, the words "and stopped him" could be understood by a jury of reasonable men to mean that the car was slowed up when it ran into the rocks. So, if defendant had then depressed the brake instead of the accelerator, reasonable men might

conclude that defendant could have stopped the car entirely before it struck the railroad embankment, or at least have checked its speed to such an extent that plaintiff, if hurt at all, would have been injured much less seriously than she was. If for any reason defendant did not or could not apply the brakes, he could at least have refrained from accelerating the car's speed.

The rate of speed at which the car was traveling when it left the road is a question which should properly receive the consideration of the jury. The prevailing opinion says that from the point where the car made its start from the standing position to the railroad embankment, is forty yards. In respondent's answering brief it is said that "the car was stopped within ninety (90) feet of where the accident took place." The testimony is that after going ten yards towards Reno on the south Verdi road, the car was stopped and backed up forty yards. The prevailing opinion also fixes forty miles per hour as a conservative estimate of the speed of the car; but in view of the short distance, the muddy road, the up-grade, the sharp curve, and the start from a standing stop, it is submitted that a jury could reasonably estimate the rate of speed as substantially less than forty miles per hour.

My associates take the view that the rocks were of such a size that the car could have passed over them without an appreciable lessening of the speed. This, I think, is also a question which should have been left to the jury. Defendant's photographic exhibit 1 shows, by comparison with the seven-inch rails, that some of the rocks appear to be at least nine or ten inches long. Furthermore, they are not smooth and rounded, but rough and irregular in shape. Those nearest the railroad embankment appear to be but a few feet from it, but defendant's photographic exhibit 2 shows that the rocks extend from this point for a distance of some ten or fifteen feet at least. According to plaintiff's testimony, the distance from where the car hit the rocks to

place it struck the railroad embankment was a few yards, not just a few feet. Nor should it be overlooked that plaintiff requested the trial court to permit the jury to view the scene of the accident. Had this application been granted, the jury could not only have seen the size, shape, number and arrangement of the rocks, but also could have observed the distance from where the car started to the place it left the road, and the distance from the latter point to the railroad embankment.

An automobile, leaving a road and running into rocks, may have its speed retarded very little by them, may be stopped completely, or be slowed up to any extent between these two extremes according to the size, shape, number and arrangement of the rocks, and other factors. This being true as a matter of *fact,* I find myself unable to say as a matter of *law* that reasonable men might not conclude, from plaintiff's testimony, that when the car ran into the rocks it was slowed up appreciably at least. That defendant was able to back the car away from the embankment is strong evidence that the rocks were not such as to stop the car entirely when it was driven off the road into them; it is by no means, however, conclusive evidence that the rocks did not appreciably diminish the speed of the car when it left the road and struck them. The record is silent as to whether any difficulty was encountered in backing the car away from the railroad.

While unable to agree with the trial court that plaintiff's evidence was insufficient to make a case for the jury under the guest statute, I am in full accord with that court's statement that plaintiff's testimony should be taken most favorably to her. In this connection the trial judge, in his oral opinion, said: "We have the evidence, and it must be taken most favorably to the plaintiff, that the car struck some rocks, and that she asked to be permitted to get out and that instead of permitting her to get out the driver stepped on the accelerator and the car hit the embankment or railroad tracks

and she was thrown through the windsheld." Thus the position of the trial court appears to be that plaintiff's evidence, even when taken, as it should be on motion for nonsuit, most favorably to her, is insufficient to make a case for the jury on the issue of gross negligence. The court does not, so far as I can see, hold that the physical facts refute the oral testimony, or make it valueless. The physical facts discussed in the majority opinion are not so fixed, or established with such certainty or definiteness, as to justify the application of the physical facts rule.

As neither of plaintiff's causes of action was based upon intoxication she could not, of course, recover on that ground; but the fact that defendant had had some drinks, that he was angry, and that plaintiff requested him to stop the car and let her out, are circumstances properly to be considered with all the other facts and circumstances in the case as having a bearing upon the question of the host's indifference to and disregard of his guest's safety. O'Neill v. McDonald, 301 Mass. 256, 16 N. E. (2d) 866; Berry, Automobiles, Seventh Ed., vol. 5, p. 136; Fenstermacher v. Johnson, 138 Cal. App. 691, 32 P. (2d) 1106, 1107.

The writer is not to be understood as saying that, had defendant rested his case immediately after plaintiff rested hers, and the case then been given to the jury, it would have been the *duty* of the jury to find that defendant had been guilty of gross negligence. The jury, after weighing the testimony, could reasonably have concluded that plaintiff had failed to make out a case of gross negligence on the part of defendant; but I think it is just as true that as reasonable men they could have found that defendant was guilty of gross negligence. The trial court, as shown by its oral opinion, proceeded upon the theory that in a case of this kind plaintiff must show such facts that the court can say, as a matter of law from those facts that there has been gross negligence. I cannot agree with that view.

It is true that under the guest statute plaintiff has the burden of proving the alleged gross negligence; but, as against a motion for nonsuit, that burden is met when he presents substantial evidence from which a jury could reasonably conclude that defendant was grossly negligent. Gough v. Smalley, supra; Storm v. Thompson, 155 Or. 686, 64 P.(2d) 1309, 1312.

### ON PETITION FOR REHEARING

October 2, 1941.

*Per Curiam:*

Rehearing denied.

TABER, J., dissenting.