(No. 7025. October 6, 1942.)

O. JACK CARSON and JESSIE CARSON, his wife, Respondents, v. LORENA TALBOT, Appellant.

[129 Pac. (2d) 901.]

E. A. Owen for appellant.

Ralph L. Albaugh and Arthur W. Holden for respondents.

BUDGE, J.—Respondents brought this action against Robert M. Talbot and appellant, Lorena Talbot, his wife, to recover damages for personal injuries sustained by respondent, Jessie Carson, wife of respondent, O. Jack Carson, while riding as a guest in an automobile owned by Robert M. Talbot and being driven at the time of the accident by appellant. Respondents' cause of action is based on alleged gross negligence, under the Nevada guest statute, [Sec. 4439, Nev. Compiled Laws, 1929 edition] as construed by the courts of that state. The cause was tried to the court and jury, resulting in a judgment against appellant, from which judgment this appeal is prosecuted.

Substantially, the salient facts are: On September 24, 1940, appellant, her daughter, Maybelle, and respondent, Jessie Carson, while en route to California in Robert M. Talbot's car, a sedan, had an accident on U. S. Highway No. 40, between Wells and Elko, Nevada. Appellant's car was preceded by a Ford pick-up truck being driven by one Floyd Jones. Respondent, Jessie Carson, testified:

"Q. And what happened when you overtook that truck?

"A. We followed it just a little way, and then there was a curve in the highway, and she speeded up and attempted

to pass it, to get around it, and I cautioned her not to pass on a curve, and she didn't. She dropped back with her side of the car slightly over the white line, to give herself vision ahead so that she could see the road . . . .

"Q. And then what happened?

"A. We followed the truck along, Oh, I am not certain as to the exact distance, I should say a quarter of a mile . . . . she over on the left side of the road, or slightly on the left of the white line, not entirely over on the other side, and then she speeded up very rapidly to pass the truck again; and as she pulled out entirely in the left hand side of the highway even with the truck my vision was cleared then and I saw the other car coming. Naturally, as anybody would have done, I screamed, and tried to brace myself against the instrument board, or whatever the name of it is. And that's all I know . . . .

"Q. You remember the car coming up, I assume, in front of you?

"A. Yes, it came up the crest of the hill; I distinctly remember that.

"Q. About how fast did you drive, or did Mrs. Talbot drive, rather, on the trip?

"A. I should say around fifty; from fifty to fifty-five, perhaps."

The collision occurred when appellant, upon her second venture, speeded up very rapidly in an attempt to pass the pick-up truck, as she reached the crest of the hill. Appellant testified that she could not see the Barthol car because it was in a gulch. Witness, Lloyd Jones, who was riding in the pick-up truck at the time of the accident, testified with regard to the location and description of the gully or gulch:

"Q. . . . You say at a point about two hundred and fifty feet east of this gully or gulch cars that are in the bottom of it are concealed from the view of drivers coming from the east, coming from the east driving westerly, as Mrs. Talbot was; is that a fact?

"A. Yes; if you drove into the bottom of this gulch and stopped, and go back two hundred and fifty feet east of that brow of the hill, or the cattle crossing (sic), and sit in an ordinary automobile, the car in the gulch is out of sight.

"Q. And, as you stated, it would be out of sight for several seconds from a car?

"A. I said according to the speed of the car that was going through the gulch. If he was going five miles an hour he might be in there possibly thirty seconds or less . . .

"Q. Then, as Mrs. Talbot approached this gulch, and assuming that the Barthol car was traveling sixty miles an hour, there was a point from two hundred and fifty feet east from the gulch, as Mrs. Talbot approached it, that the Barthol car was out of sight for five seconds; is that right?

"A. Providing she was back from the top of the hill two hundred and fifty feet, yes."

Respondent, O. Jack Carson, visited the scene of the accident and testified regarding the location of the gulch or gully:

"A. We drove a car going west up at different distances from the crest of the hill, different distances from the sign, and watched other cars coming from the west, traveling east, and measured the distance from the crest of the hill that they [cars] were visible at all times down through the bottom of the gully; and we found that at two hundred feet a car—from the crest of the hill or the cattle crossing sign, a car was visible all the way through the gully if you were sitting in a car at the driver's side.

"Q. That would be, a car was visible at a point two hundred feet east of the ——.

"A. Cattle crossing sign.

"Q. At the crest of the hill?

"A. At the point of impact. The point—or, the pieces from the radiator grills of the cars were found directly in line with the cattle crossing sign."

There is also other evidence that the accident occurred at the crest of the hill; that the cattle crossing sign is at the crest of the hill; and that the accident occurred across from, or, as appellant testified, near the cattle crossing sign; that cars in the gulch may be seen by a person in a car at the crest of the hill or at a point two hundred feet east of the crest of the hill. Lloyd Jones, heretofore referred to, further testified:

"Q. Did you make any tests or examination to ascertain whether you could see a car in the bottom of that ravine or gully from the road on this side of the crest of the hill?

"A. Yes, sir.

"Q. What did you do?

"A. Mr. Carson and Mr. Holden and I were riding in a car, and we went out east of the hill a ways and turned around and drove back toward the hill going west, and traffic was moving along the road all the time at the time, and we kept moving up closer to this hill, until at two hundred and fifty feet from the top, or the cattle crossing sign, the brow of the hill, the top of the hill, a car was out of sight for a period of seconds.

"Q. Seconds?

"A. Seconds—Two, or three, or five, or ten seconds, according to its speed.

"Q. At how far away?

"A. At two hundred and fifty feet from the top of the hill.

"Q. All right.

"A. And we drove up then another fifty feet and stopped the car, and stayed there until three or four cars passed through this gulch, and we could see the tops of those cars all the time they were in the gulch; from the time they came in sight on the west side, away ahead, a mile away, almost, until they passed our car—the car we was sitting in, we could see the top of the car at all times— the cars that passed through the gulch.

"Q. Could you see the tops of all the cars?

"A. Yes, of cars—or sedans, or anything like that. I don't recall seeing a roadster or one of—those cars without any top on them; I didn't see any cars like that go through there. But sedans and coupes were visible at all times through that gulch at two hundred and fifty feet from the cattle crossing sign.

"Q. [By the court.] No. You said at two hundred and fifty feet there was a few seconds when you couldn't see them.

"A. That's right.

"Q. And you moved up fifty feet?

"A. At two hundred feet from the top of the hill the car was visible in the gulch at all times, the top of the car."

The exact point where the collision occurred, and whether cars passing through the gulch were visible and could and

should have been seen by appellant, were questions of fact for the jury. If appellant did not see the oncoming car, there was certainly sufficient evidence to go to the jury on this point, because the evidence strongly indicates, that had she looked, she could have seen the car.

Witness, Lloyd Jones, testified that, a few minutes after the accident, he heard appellant say: "I am terribly sorry. I must be in the wrong; it looks like I am in the wrong, but I am terribly sorry." Floyd Jones testified: "I heard Mrs. Talbot [appellant] say, 'I am sorry, I am sorry. I am sure it was my fault.' . . . She said it several times." With regard to the above testimony, appellant testified:

"Q. Do you remember having any conversation with the driver of the car with which you collided?

"A. I know nothing of it.

"Q. Did you tell her, or anyone else at the scene of the accident, that you were very sorry, and it was your fault?

"A. Well, we were all rendered unconscious; I didn't know anything about it."

We have not incorporated all of the testimony of the various witnesses, as to just where the cars were when the collision occurred; the speed with which appellant was driving; as to whether or not her view was obstructed, and so forth; there being some conflict in the testimony as to these and other facts.

■ Where a party moves for a nonsuit, directed verdict or judgment notwithstanding the verdict, such motion admits the truth of his adversary's evidence and his adversary is entitled to the benefit of every inference favorable to him, which may be drawn legitimately from any evidence before the court at the time the motion is made. (*Manion v. Waybright*, 59 Ida. 643, 86 P. (2d) 181; *Hendrix v. City of Twin Falls*, 54 Ida. 130, 137, 29 P. (2d) 352; *Stearns v. Graves*, 62 Ida. 312, 111 P. (2d) 882.)

Appellant strenuously and ably contends that gross negligence is purely a question of law and not of fact, and relies on *Hart v. Kline*, 61 Nev. 96, 116 P. (2d) 672, a guest case. In that case, it will be observed that the court held that the physical facts refute plaintiff's testimony, as to the immediate happenings after the car left the road, to such an extent as to render the oral testimony valueless. "Physical facts, which speak the truth unerringly, cannot

be overcome by oral testimony." (*Hart v. Kline*, supra; *Petajaniemi v. Washington W. P. Co.*, 22 Ida. 20, 27, 124 Pac. 783; *Alameda Min. Co. v. Success M. Co.*, 29 Ida. 618, 637, 161 Pac. 862; *Young v. Washington W. P. Co.*, 39 Ida. 539, 544, 228 Pac. 323.) In other words, the pertinent part of appellant's contention here is, that the trial court should have said, as a matter of law, that the facts in the case were not sufficient to constitute gross negligence, under the Nevada guest statute, as interpreted by the Nevada case.

Careful examination of the Hart-Kline case, to our minds, does not show it to be in conflict with the principles of law heretofore announced by this court under similar facts. In that case, the holding of the trial judge was, that plaintiff's evidence, even considered as it should be on a motion for nonsuit or directed verdict, most favorably to plaintiff, was insufficient to make a case for the jury on the issue of gross negligence. The position taken in the majority opinion was that the physical facts refuted the oral testimony; that the oral testimony became valueless; or, in other words, there was no evidence accepted in the majority opinion except physical facts, from which physical facts it was concluded, that the evidence was clearly insufficient to submit the question of gross negligence to the jury.

In the instant case, the evidence does not support the conclusion, that the physical facts are undisputed and speak the truth unerringly, rendering the oral testimony valueless. In *Hart v. Kline*, supra, the Nevada court held that the physical facts refuted plaintiff's testimony and rendered it valueless; while in the instant case the physical facts do not refute but corroborate the oral testimony of respondents and their witnesses.

The question of gross negligence will be submitted to the jury where the facts are in dispute (*Wheeler v. Oregon R. & Nav. Co.*, 16 Ida. 375, 392, 102 Pac. 347; *Fleenor v. Oregon Short Line R. Co.*, 16 Ida. 781, 102 Pac. 897; *Tucker v. Palmberg*, 28 Ida. 693, 702, 155 Pac. 981); and where the facts are not in dispute but reasonable men might reasonably draw different inferences from the facts (*Adams v. Bunker Hill & S. Min. Co.*, (on rehearing),12 Ida. 643, 651, 89 Pac. 626, 628; *McKissick v. Oregon Short L. R. Co.*, 13 Ida. 195, 89 Pac. 629; 45 C. J., sec. 855, p. 1289; *Wheeler v. Oregon R. R., etc., Co.*, 16 Ida. 375, 403, 102 Pac. 347; *Pipher v. Carpenter*, 51 Ida. 548, 7 P. (2d) 589; *Miller v. Gooding Highway Dist.*, 55 Ida. 258, 41 P. (2d) 625;

*Call v. City of Burley,* 57 Ida. 58, 62 P. (2d) 101). The question of gross negligence will not be submitted to the jury where the facts are not in dispute and reasonable men can reasonably draw but one inference from the facts. (*McIntire v. Oregon Short L. R. Co.,* 56 Ida. 392, 401, 55 P. (2d) 148; *Cooper v. Oregon Short L. R. Co.,* 45 Ida. 313, 325, 262 Pac. 873; *Adkins v. Zalasky,* 59 Ida. 292, 300, 81 P. (2d) 1090). The above principles are equally applicable both in dealing with ordinary negligence and with gross negligence.

In *Hart v. Kline,* supra, the court simply held that there were no facts before it to be considered except the physical facts, which did not show, as a matter of law, such negligence as amounted to gross negligence, which holding is not out of harmony with the principles of law above stated.

Only in clear cases, that is to say, where the facts are not in dispute and reasonable men can reasonably draw but one inference from the facts, will the trial court pass on the question of negligence. All others should be submitted to the jury. In *Owen v. Taylor,* 62 Ida. 408, 114 P. (2d) 258, 263, in quoting from *Goodwin v. Goodwin,* 2d Dist., 5 Cal. App. (2d) 644, 43 P. (2d) 332, 333, a guest case, it was held:

" 'When liability attaches only for gross negligence it is for the trier of facts to pass upon the question of whether such negligence exists . . . . It is only where the evidence points unerringly to a conclusion as to whether one is guilty of gross negligence or not that the matter becomes a question of law within the power of an appellate court to decide.' "

Further on in *Owen v. Taylor,* supra, it is held:

"And this court is committed to the rule it will pass on a question of negligence 'only in clear cases,' 'where the question of negligence is free from doubt.' [Citing cases.] . . . . 'All that can be said is that, unless the question of negligence is free from doubt, the court cannot pass upon it as a question of law; that is, if after considering all the evidence and the inferences that may be deduced therefrom the court is in doubt whether reasonable men, in viewing and considering all the evidence, might arrive at different conclusions, then this very doubt determines the question to be one of fact for the jury and not one of law for the court.' "

■ Ordinarily, whether a driver of an automobile is guilty of gross negligence, giving rise to liability to a guest, is a question of fact for the jury. (*Owen v. Taylor,* supra; *Goodwin v. Goodwin,* supra; *Meighan v. Baker,* 119 Cal. App. 582, 6 P. (2d) 1015; *Younger v. Gallagher,* 145 Ore. 63, 26 P. (2d) 783; *Morris v. Erskine,* 124 Neb. 754, 248 N.W. 96; *White v. Center,* 218 Iowa 1027, 254 N.W. 90; *Malone v. Clemow,* 111 Cal. App. 13, 295 Pac. 70; *Krause v. Rarity,* 210 Cal. 644, 293 Pac. 62, 77 A.L.R. 1327; *Miles v. Van Hagen, et al.,* (Cal.) 128 P. (2d) 89.)

■ The statutory law of Nevada, a sister state, in the absence of pleading or proof to the contrary, is presumed to be the same as the statutory law of this state. (*Owen v. Taylor,* supra, and cases cited therein.) Sec. 48-513, subd. b., I.C.A., provides:

"The driver of a vehicle shall not overtake and pass any other vehicle proceeding in the same direction upon the crest of a grade or upon a curve in the highway where the driver's view along the highway is obstructed within a distance of five hundred feet."

Appellant testified that she was within 250 feet of the crest of the hill when she attempted to pass the pick-up truck; therefore, she violated the above statute.

*Devereaux v. Blanchard,* 174 Wash. 673, 26 P. (2d) 82, lays down the rule that "Where the driver of an automobile, in attempting to overtake and pass a vehicle going in the same direction, collides with an oncoming car, the question of gross negligence is for the triers of fact." So it may be gross negligence where the driver of an automobile persists in attempting to pass, on a hill, a car ahead, when a third car, approaching from the opposite direction, is clearly observable near at hand; or where the view, along the road in the direction from which such third car might be, and, in fact, is approaching, is obscured; but whether it be so or not, is a question of fact for the jury. (*Cole v. Morse,* 85 New Hampshire 214, 155 Atl. 694.)

■ We feel confident, that when all the evidence is considered, there was sufficient evidence to warrant the trial court in submitting to the jury the question of whether or not appellant was guilty of gross negligence, and in denying appellant's motions for directed verdict and for judgment notwithstanding the verdict.

We have examined the court's instructions and those

offered by appellant and refused, and fail to find any prejudicial error urged that would justify a reversal. The judgment is affirmed, and it is so ordered. Costs to respondents.

Givens, C. J., Morgan J., and Porter, D.J., concur.

Ailshie, J., concurs in the conclusion.

Holden, J., deeming himself disqualified, did not participate.