Chris OWENS, Wife of/and Sol Owens, Plaintiffs-Appellants,

v.

**SUMMA CORPORATION and XYZ Insurance Company, Defendants-Appellees.**

No. 80–3139
Summary Calendar.

United States Court of Appeals,
Fifth Circuit,
Unit A.

Sept. 8, 1980.

Rehearing Denied Oct. 8, 1980.

Harry T. Widmann, New Orleans, La., for plaintiffs-appellants.

McGlinchey, Stafford & Mintz, J. Michael Johnson, Suzanne P. Keevers, New Orleans, La., for defendants-appellees.

Before BROWN, POLITZ and TATE, Circuit Judges.

PER CURIAM:

This case concerns the defendants' liability for a theft of jewelry and cash from the plaintiffs while they were guests at the Sands Hotel in Las Vegas, which is owned by the defendant Summa Corporation. The plaintiffs appeal from a summary judgment in favor of the defendants. They contend that factual issues preclude summary judgment and that the innkeeper was strictly liable for guest loss under the common law applicable, so that the district court erred in applying a Nevada statute which limits the innkeeper's liability.

*Context Facts*

On the night in question, the plaintiffs returned to their hotel room in the early morning hours. Mrs. Owens still had the jewelry that she had been wearing that night. Upon entering their room, the plaintiffs turned the dead bolt lock, and the room appeared to be secure. However, between 3:30 and 5:30 A.M. a burglar was able to obtain access to the room because, at some time prior to the plaintiffs' return to their room, someone had replaced the dead bolt with a non-functioning duplicate dead bolt. At that time, the hasp from a sliding lock had also been removed. Upon returning to the room, Mr. Owens had noticed the absence of this hasp, which he remembered seeing there earlier, but he thought the room secure because of the apparently functioning dead bolt.

Accepting as true, for purposes of summary judgment, the factual contentions of the plaintiffs, a dummy dead bolt could be substituted for the real one within two to five minutes; in addition, although similar thefts had occurred previously, the Sands Hotel had not installed the dead bolts with

rivets or non-reversible screws to defeat such attempted thefts. The plaintiffs further contend that the security measures were inadequate because: 1) there were insufficient guards; 2) the guard that patrolled their area of the hotel could easily do so only perfunctorily; 3) the guests were not warned about the possibility of this type of entry; 4) the staff was improperly instructed on how to detect a fake dead bolt; and 5) the plaintiffs were not informed of the availability of an escort service to and from the hotel vault even though they had stayed at the Sands several times and were known to carry valuable jewelry.

On the other hand, it appears to be undisputed that the hotel had a safety deposit vault and that the plaintiffs knew so. It also appears to be undisputed that the sliding hasp lock had been installed in order to insure that guests would have a lock that could be visibly checked, although the plaintiffs contend that this lock would have been · ineffective at preventing a forcible entry. Furthermore, the plaintiffs do not appear to contest the defendants' contention that the guard assigned to their area had been by eight times on the night in question, although they do contend that he had too much area to cover and may have only poked his head out of the stairwell on their floor.

The plaintiffs filed suit in Louisiana state court to recover their losses, but the defendants removed the case to federal court on the ground of diversity of citizenship. The defendants eventually moved for summary judgment on the ground that, as a matter of law, they were not liable under the allegedly applicable Nevada statute, Nev.Rev. Stat. § 651.010. Both sides submitted statements of uncontested facts established by the depositions, and the district court granted summary judgment for the defendants.

## I.

The preliminary issue in this case concerns the defendants' standard of care. In view of the factual issues raised by the plaintiffs, summary judgment was almost

certainly improper if the plaintiffs could prevail merely by showing that the hotel was negligent. The defendants, however, contend that Nev.Rev.Stat. § 651.010 is the applicable statute and that this statute prevents them from being liable absent a showing of gross neglect. The plaintiffs, on the other hand, argue that this statute does not apply; they contend that since they were in the room when the theft took place, it cannot be said that they "left" the jewelry in their room. The statute in question provides:

No owner or keeper of any hotel, inn, motel, motor court, or boardinghouse or lodginghouse in this state shall be civilly liable after July 1, 1953, for the loss of any property *left in the room of any guest* of any such establishment by reason of theft, burglary, fire or otherwise, *in the absence of gross neglect* upon the part of such keeper or owner.

Nev.Rev.Stat. § 651.010 (italics ours).

■ In our opinion, the Nevada Supreme Court would agree with the defendants' proposed interpretation of the statute. We believe that the statute's reference to "property left in the room of any guest" distinguishes between property left in the room and property given to the hotel for safe-keeping rather than between property left in the room while the guests are out and property that they keep with them while they sleep. In a case involving very similar facts, *Levitt v. Desert Palace, Inc.,* 601 F.2d 684, 685 (2d Cir. 1979), the court discussed the history of statutes limiting the liability of innkeepers:

The extraordinary standard of care imposed upon the innkeeper at common law originated in the feudal conditions of the Middle Ages, R. Brown, The Law of Personal Property § 102 at 482 (2d ed. 1955), and has long since been ameliorated by state legislation.

Section 651.010 is state legislation of that nature, intended to diminish the strict duty owed under the common law by innkeepers to their guests.

The plaintiffs contend that the Nevada legislature intended to limit innkeepers' lia-

bility for theft from empty rooms only, because of the increased risk of violence to the guests if they are present during an attempted theft. However, no Nevada court has ever adopted the interpretation posited by the plaintiffs, and we believe that the more reasonable interpretation is that the legislature intended to limit innkeepers' liability for all thefts, not just those from empty rooms.

We feel bolstered in our interpretation of the statute by the response in *Levitt* to a similar proposed construction of this statute:

> While we need not reach the issue, we do note that appellees' construction of the Nevada statute would have the anomalous effect of requiring the innkeeper to exercise the highest degree of care while the guest was in the room, presumably the time when the risk of theft would be slightest.

601 F.2d at 686 n. 2.[1] This anomalous result is only one of several reasons that convinces us that the defendants' proposed construction is correct. For example, it seems clear that the legislature intended to relieve the innkeeper of some of the responsibility for preventing theft from guests' rooms yet it is not clear what steps an innkeeper could take that would reduce the risk of theft from occupied rooms but not from unoccupied rooms. In fact, the situation in the instant case is the only example of such a dichotomy that comes to mind, and we are not willing, without more explicit direction from the statute, to assume that the statute was drafted to differentiate between rooms which were occupied at the time of the theft and those that were not. Under the statutory scheme, the protection available to a hotel guest is to deposit valuables with the hotel for safe-keeping,[2] and this is just as easy to do when the guests go back to their room as when they leave it. In summary, we are convinced that "property left in the room of any guest" means property that it not given to the hotel for safe-keeping.

## II.

■ Having concluded that there is an applicable statute requiring the plaintiffs to show gross neglect in order to recover, we must determine whether, after considering the pleadings, depositions, and other showings, there is a genuine issue of material fact as to this issue. See F.R.Civ.P. Rule 56(c). Upon such consideration, we conclude, as did the district court, that there is no such issue. Had a trial jury accepted all facts and inferences favorable to the plaintiffs arising from the factual showing made, under *Levitt, supra,* a jury finding of gross neglect would not have been upheld as a matter of law.

In *Levitt,* the plaintiffs had been the victims of this same kind of theft; the thief had switched dead bolts, entered while the plaintiffs were asleep, and stolen jewelry allegedly valued at more than one million dollars. The jury was instructed that they must find gross neglect under § 651.010 to support liability, and the defendants were found liable. On appeal, the defendants argued that there was insufficient evidence to support the finding of gross negligence, and the plaintiffs belatedly offered the interpretation of the statute that we today reject. However, the court ruled that any objection to the jury instructions had been

---

1. The court in *Levitt* did not have to interpret the statute because the plaintiffs had waived their objection to the charge to the jury by failing to timely object. Consequently, the issue before the court was whether there was *sufficient evidence to support the jury's finding* that the defendant was liable under § 651.010 for gross neglect.

2. In 1979 Nevada amended its innkeeper liability statute by adding a second paragraph:

> If an owner . . . of any hotel . . provides a fireproof safe or vault in which guests may deposit property for safekeeping, and notice of this service is personally given to a guest or posted in the office and the guest's room, the owner . . . is not liable for the theft . . . of any property which is not offered for deposit in the safe or vault by a guest unless the owner or keeper is grossly negligent. . . .

Nev.Rev.Stat. § 651.010(2) (1979). Although this amendment is not essential to our decision, we do find it to be indicative as to the overall intent of the Nevada legislature.

waived, but (under facts very similar to the present) it further reversed the judgment based upon a jury finding of gross neglect by the innkeeper.

■ In *Levitt* the court equated "gross neglect" with "gross negligence" and quoted the following language from *Hart v. Kline*, 61 Nev. 96, 116 P.2d 672 (Nev.1941), in which the Nevada Supreme Court had construed the phrase "gross negligence" in the context of the Nevada automobile guest statute:

> Gross negligence is substantially and appreciably higher in magnitude and more culpable than ordinary negligence. *Gross negligence is equivalent to the failure to exercise even a slight degree of care.* It is materially more want of care than constitutes simple inadvertence. It is an act or omission respecting legal duty of an aggravated character as distinguished from a mere failure to exercise ordinary care. *It is very great negligence, or the absence of slight diligence, or the want of even scant care.* It amounts to indifference to present legal duty, and to utter forgetfulness of legal obligations so far as other persons may be affected. It is a heedless and palpable violation of legal duty respecting the rights of others. The element of culpability which characterizes all negligence is in gross negligence, magnified to a higher degree as compared with that present in ordinary negligence. *Gross negligence is manifestly a smaller amount of watchfulness and circumspection than the circumstances require of a prudent man.*

61 Nev. at 100, 116 P.2d at 674 (italics ours). In the absence of contrary Nevada jurisprudence, as did the *Levitt* court we believe that this is the standard that the Nevada Supreme Court would use in construing "gross neglect" under Nev.Rev.Stat. § 651.-010.[3]

In accordance with the *Hart* standard, we must determine whether there is any possible construction of the facts that would allow a reasonable jury to find that the defendant hotel failed "to exercise even a slight degree of care." In responding to the motion for summary judgment, the plaintiffs did not dispute that the hotel had a safe-deposit vault that was available to the guests or that there were several guards employed by the hotel, one of whom was assigned to the "Tower" area, where the plaintiffs were staying. The plaintiffs did not dispute that the guard assigned to their area had checked in at their floor eight times on the night in question, although they did argue that his guard was inadequate and that his inspection may well have been only perfunctory. Moreover, the plaintiffs did not dispute that the sliding hasp locks had been installed by the hotel to provide the guests with a lock that could be visibly checked. The plaintiffs, however, argue that: 1) the hotel's security was completely "inadequate"; 2) the guests were not warned to check the operation of the dead bolt; 3) Mrs. Owens was known by the hotel to carry large amounts of jewelry, but was not advised of the escort service to the hotel vault; 4) the staff had been improperly instructed on how to check for the insertion of a fake dead bolt;[4] and 5) the hotel had negligently failed to install the dead bolts with rivets or non-reversible screws.

Given the facts that were not contested on the motion for summary judgment, we do not think that the plaintiffs' under the *Hart* test, could have recovered as a matter of law; for these facts do not show that the hotel failed "to exercise even a slight degree of care" so as to be chargeable with gross neglect. The hotel had a vault, they provided guards walking periodic inspection of the hallways, there had at least been an attempt to instruct the staff to check for fake dead bolts, and there was a sliding

---

3. In *Levitt* the Second Circuit Court of Appeals used the *Hart* standard; none of the parties had objected, and the court felt that it was unnecessary to examine other definitions. In the instant case as well, none of the parties appear to quarrel with this definition.

4. The staff was allegedly instructed to close the door before turning the dead bolt. The plaintiffs contend that if the door was closed first, it would not have been possible to see whether the dead bolt was functioning properly.

hasp lock that could not be tampered with without leaving the lock visibly inoperable.

*Conclusion*

Under the Nevada statute absolving hotel owners of liability for theft, absent gross neglect, as a matter of law the plaintiffs could not, under the showing made, have proved their case. Given the facts that were not disputed by the plaintiffs, the hotel could not under Nevada standards be charged with gross neglect. Summary judgment for the defendants was properly granted.

AFFIRMED.