**Harry KABO and Roslyn Kabo**

v.

**SUMMA CORPORATION.**

Civ. A. No. 78–3972.

United States District Court,
E. D. Pennsylvania.

Oct. 15, 1981.

15. *Cf. Meachum v. Fano*, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); *Montanye v. Haymes*, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976).

Abe Lapowsky, Philadelphia, Pa., for plaintiffs.

Ronald B. Hamilton, Philadelphia, Pa., for defendant.

## MEMORANDUM

EDWARD R. BECKER, District Judge.

While plaintiffs were guests at the Desert Inn in Las Vegas, Nevada, and were asleep in their hotel room, the room was burglarized, and property (mostly jewelry) which they value at $63,600 was taken. Plaintiffs have brought this negligence action against Summa Corporation, the operator of the Desert Inn, alleging breach of a duty to provide adequate security.[1] It appeared at a pretrial conference that Nevada's law governing such matters is far more hospitable to innkeepers than is Pennsylvania's, and therefore, that the outcome of the case might depend on a choice of law determination. It also appeared that if Nevada law should apply, liability might turn on resolution of the questions: (1) whether the rights of the parties are governed by Nevada common law or the Nevada Innkeepers Statute; and (2) whether, in the event that the Innkeepers Statute applies, plaintiffs bear the burden of proving defendant's gross neglect or defendant bears the burden of proving the absence of gross neglect. We asked the parties to brief the questions, and we make herein an *in limine* determination thereon.

For the reasons which follow, we conclude that: (1) Nevada law governs; (2) the Nevada Innkeepers Statute, Nevada Revised Statutes § 651.010 (1953),[2] rather than Nevada common law applies; and (3) plaintiffs must bear the burden of proving gross neglect on the part of the defendant. These positions are those advanced by defendant. They also agree with the conclusions of United States Magistrate Peter B. Scuderi who gave us an excellent memorandum on this matter following a pretrial conference which he conducted.

### I. *Choice of Law*

In this diversity action, our choice of law decision must be governed by the choice of law rules of Pennsylvania, the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has adopted a hybrid choice of law approach combining Professor Brainerd Currie's "interest analysis"[3] with the *Restatement (Second) of Conflict of Laws* (1971) grouping of contacts theory. *Melville v. American Home Assur. Co.*, 584 F.2d 1306 (3d Cir. 1978); *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964). This approach is applicable in tort as well as contract actions. *See Melville*, 584 F.2d at 1311–12; *Cipolla v. Shaposka*, 439 Pa. 563, 267 A.2d 854 (1970).

The law of three states, Delaware, Nevada, and Pennsylvania, is potentially applicable to this case. Because the only alleged connection to Delaware is that it is defendant's place of incorporation, and further, because no party argues that Delaware law should govern, we need decide only between Nevada and Pennsylvania law.

The conflict between these states is real. Nevada has an interest in regulating the

---

1. Plaintiffs are Pennsylvania citizens. It is not clear on the record whether Summa is a Delaware or Nevada corporation but, in either case, diversity jurisdiction attains.

2. The Nevada Innkeepers Statute was amended in 1979, subsequent to the incidents behind this case. The 1953 version of the statute, in effect at all times relevant herein, will be the focus of our consideration.

3. *See* B. Currie, *Selected Essays on the Conflict of Laws* (1963); Currie, *The Disinterested Third State*, 28 *L. & Contemp. Probs.*, 757 (1963).

behavior and liability of innkeepers operating within its boundaries. This interest is reflected in the Nevada Innkeepers Statute, which limits innkeepers' liability for guests' losses. Nev.Rev.Stat., § 651.010 (1953). At the same time, Pennsylvania has an interest in providing for the welfare of its citizens. This interest coincides with the Pennsylvania Innkeepers Statute, which seeks to protect guests staying in hotels and inns. Pa. Stat.Ann. tit. 37, § 61 (Purdon 1954). The contacts possessed by each state thus coincide with the "policies and interests underlying the particular issue before the court." *Griffith*, 416 Pa. at 21, 203 A.2d at 805.

Under the common law of both states, an innkeeper is liable as an insurer for losses suffered by his guests. *See Cloward v. Pappas*, 79 Nev. 482, 387 P.2d 97 (1963); *Buck v. Hankin*, 217 Pa.Super. 262, 269 A.2d 344 (1970). In an attempt to ease the burden of common law liability, the legislatures of Nevada and Pennsylvania have enacted innkeepers statutes. *See Owens v. Summa Corp.*, 625 F.2d 600, 602 (5th Cir. 1980) (*per curiam*) (interpreting the Nevada Innkeepers Statute); *Buck v. Hankin*, 217 Pa.Super. at 268, 269 A.2d at 347 (Pennsylvania Innkeepers Statute enacted "in derogation of the common law"). *See also, Kelly v. Milner Hotels*, 176 Pa.Super. 316, 318, 106 A.2d 636, 637 (1954).

The two statutes, however, provide significantly different degrees of protection for guests' property. Nevada's primary concern appears to be limited to reducing an innkeeper's liability. A Nevada innkeeper is liable "for the loss of any property left in the room of any guest [only if the innkeeper acted with] gross neglect." Nev. Rev.Stat. § 651.010 (1953). The Pennsylvania legislature, on the other hand, sought to ensure that guests in hotels and inns would benefit from a minimum level of safeguards against harm to their belongings. Under the Pennsylvania law, an innkeeper is liable for his guests' losses unless he provides such things as (1) a metal safe or vault for the storage of guests' belongings, (2) bolts or locks on doors, (3) suitable fastenings on transoms and windows, and (4) a copy of the Pennsylvania Innkeepers Statute "printed in distinct type, constantly and conspicuously posted, in not less than ten conspicuous places in all" throughout his inn or hotel. Pa.Stat.Ann. tit. 37, § 61 (1954).

■ Despite Pennsylvania's interest in this case, we believe that Pennsylvania courts would apply Nevada law. The Pennsylvania Supreme Court's opinion in *Cipolla v. Shaposka, supra,* compels this conclusion. That case involved a conflict between Pennsylvania and Delaware law. Plaintiff was a Pennsylvania resident who, while a guest in a car driven by defendant, a Delaware resident, suffered injuries in an accident occurring in Delaware. The car was registered in Delaware under the name of defendant's father, also a Delaware resident. If Delaware law were applied to the case, plaintiff would be barred from recovering due to Delaware's Guest Statute which prohibited a guest from recovering for losses caused by his host's mere negligence. Pennsylvania had no such statute and would have permitted recovery upon proof of the driver's negligence.

The Pennsylvania Supreme Court held that Delaware law should apply. The court recognized that Pennsylvania's policy was to permit guests to recover for injuries caused by their host's negligence. Because the plaintiff was a Pennsylvania resident, Pennsylvania was an interested jurisdiction with a relevant contact to the case. That was, however, Pennsylvania's only contact. Delaware was also an interested jurisdiction with a relevant contact, for it had a policy that hosts should not be liable to their guests for mere negligence and the defendant was a Delaware resident. The court found an additional and significant Delaware contact in that the automobile involved in the accident was registered and housed in Delaware, and insurance rates depend on the state in which the automobile is housed rather than the domicile of the owner or driver. On these grounds the court concluded that Delaware had the qualitatively greater contacts and the greater interest in having its law applied.

The court also said that Delaware law should apply for the reason that the accident occurred in Delaware:

[I]t seems only fair to permit a defendant to rely on his home state law when he is acting within that state .... Inhabitants of a state should not be put in jeopardy of liability exceeding that created by their state's laws just because a visitor from a state offering higher protection decides to visit there.

439 Pa. at 567, 267 A.2d at 856–57.

The quality of contacts and the balance of interests in *Cipolla* strikingly resemble those involved in this case. Plaintiffs are attempting to impose their home state's more demanding standard of conduct for an incident occurring in defendant's home state (which prescribes a looser standard of conduct). Although we do not here face a state's concern over insurance rates, we confront an analogous situation—Nevada's interest in the cost of operating a hotel within its borders. This interest deserves equal consideration, particularly in view of Nevada's great concern with its tourist industry, a fact of which we take judicial notice. A decision applying Pennsylvania law to the operation of a Nevada hotel might have the same effect upon these hotel rates as applying Pennsylvania law in *Cipolla* might have had upon Delaware automobile insurance rates.

The Pennsylvania Supreme Court's emphasis on fairness and territorial considerations in choice of law matters has particular relevance here. The *Restatement (Second) of Conflict of Laws* generally eschews consideration of "the protection of justified expectations" in a negligence case "when the parties act without giving thought to the legal consequences of their conduct or to the law that may be applied." *Restatement (Second) of Conflict of Laws* § 6 comment g (1971). But in this case, the relevant standard of care is prescribed by a statute. An innkeeper in Nevada is entitled to rely upon that state's statutes in not taking precautions that would have been mandated by common law or another state's statutes. As *Cipolla* makes clear, when the

conduct and injury giving rise to the suit occur in the defendant's home state, the defendant has a justified expectation that the law of his home state will be applied. A contrary position would penalize Nevada innkeepers for not taking special measures solely for the benefit of Pennsylvania patrons. In light of *Cipolla*, we do not think that Pennsylvania courts would approve such an awkward extraterritorial application of Pennsylvania law.

Finally, our application of Nevada law conforms to the *Restatement*'s guidelines for determining the choice of law. This case was contemplated by the *Restatement*'s commentary. In the *Restatement*'s words:

When the injury occurred in a single clearly ascertainable state and when the conduct which caused the injury also occurred there, that state will usually be the site of the applicable law with respect to most issues involving the tort. This is particularly likely to be so with respect to issues involving standards of conduct, since the state of conduct and injury will have a natural concern in the determination of such issues.

*Restatement (Second) of Conflict of Laws* § 145 comment e (1971).

We do not gainsay Pennsylvania's interest in enhancing the welfare of its own citizens who may be wronged while they sojourn beyond its borders, but, as in *Cipolla*, that contact and interest is far outweighed. We therefore hold that Nevada law governs.

II. *Applicability of the Nevada Innkeepers Statute*

Plaintiffs argue that, if Nevada law governs this case, we should apply Nevada common law rather than the Innkeepers Statute. As we pointed out at page 1328, *supra*, under Nevada common law an innkeeper is absolutely liable for the losses of his guests. The Nevada Innkeepers Statute, Nev.Rev.Stat. § 651.010 (1953), on the other hand, provides:

No owner or keeper of any hotel, inn, motel, motor court, or boardinghouse or

lodginghouse in this state shall be civilly liable after July 1, 1953, for the loss of any property left in the room of any guest of any such establishment by reason of theft, burglary, fire or otherwise, in the absence of gross neglect upon the part of such keeper or owner.

Plaintiffs seize upon the statute's phrase "property left in the room of any guest" as the basis for their argument. According to plaintiffs, the lost property for which they seek damages was not property "left" in their room because the property was stolen from their room while it was occupied by them. The statute, they argue, should apply only if the guest exits from the room and leaves the stolen property behind.

■ No Nevada court has yet construed this statutory phrase. The Fifth Circuit's opinion in *Owens, supra,* a case involving a factual situation similar to that before us, provides the most authoritative interpretation of the statute. In that court's opinion, the phrase " 'property left in the room of any guest' distinguishes between property left in the room and property given to the hotel for safekeeping, rather than between property left in the room while guests are out and property that they keep with them while they sleep," 625 F.2d at 662. We agree with the Fifth Circuit that this is the most reasonable interpretation of the statute. Indeed, a contrary result would expose the innkeeper to the greatest liability (*i. e.,* for ordinary as opposed to gross negligence) at a time when the risk of theft would be slightest (*i. e.,* when the guests are in the room). *See Levitt v. Desert Palace, Inc.,* 601 F.2d 684, 686 n. 2 (2d Cir. 1979) (discussing Nevada Innkeepers Statute) (dictum). *Accord, Owens,* 625 F.2d at 603.

Notwithstanding the foregoing, plaintiffs rely on the following excerpt from the Minutes of the Nevada State Legislature in support of their argument.

Mr. Cahill submitted to the committee a copy of Nev.Rev.Stat. 679 A. 100 [the new innkeeper's statute] to which he referred, attached as Exhibit "B." He also suggested that the bill be amended on page one, line 5, by deleting the word "left." He stated that they felt this change should be made to protect the owner from not being covered by the limitation should the guest be burglarized while sleeping, etc.

Proposed Amendments to the Innkeeper's Statute: Hearings on SB 491 Before the Assembly Committee on Commerce (May 8, 1979) (Statement of Robins Cahill, Nevada Resort Association of Las Vegas).

Plaintiffs' attempt to infuse the Innkeepers Statute with a meaning derived from this excerpt fails in two respects. First, we are loathe to infer the intent of the Nevada Legislature from the testimony of a single witness, especially when the most reasonable reading of the statute contradicts that witness. "The remarks of a single legislator, even the sponsor are not controlling in analyzing legislative history." *Chrysler Corp. v. Brown,* 441 U.S. 281, 311, 99 S.Ct. 1705, 1722, 60 L.Ed.2d 208 (1979). *A fortiori,* we can place little weight on the isolated statements of a single witness. Second, our task is construing the 1953 statute, which was in effect at the time of the incidents behind this case. The cited legislative history originated in hearings held in 1979 on an amendment to the Innkeepers Statute. We cannot accord this evidence the weight of contemporaneous legislative history. What happened subsequently is the product of members of a legislature so distant in time from the enacting legislature that we cannot accept these remarks, even if indicative of the 1979 legislature's intent, as an accurate expression of the earlier legislature's intent. *Cf. Consumer Prod. Safety Comm. v. GTE Sylvania, Inc.,* 447 U.S. 102, 116–120, 100 S.Ct. 2051, 2060–2062, 64 L.Ed.2d 766 (1980) (rejecting subsequent legislative history as guide to intent behind earlier legislation); *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960) ("[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one.")

Accordingly, in the absence of any contrary indications from Nevada courts, we shall follow *Owens* in interpreting the Ne-

vada Innkeepers Statute. Because neither party disputes that the plaintiffs' property was stolen from their room, we hold that the Nevada Innkeepers Statute, and not the common law, applies to this case.

### III. *The Burden of Proof*

Plaintiffs argue that, if the Nevada Innkeepers Statute applies, defendant bears the burden of proving the absence of gross neglect on its part. We disagree and hold that plaintiffs bear the burden of proving defendant's gross neglect in order to recover under the statute.

■ Generally, under Pennsylvania choice of law rules, "procedural" matters of burden of proof are determined by the law of the forum. *Melville*, 584 F.2d at 1310. Where, however, the matter of burden of proof has such a "substantive impact" as to affect the decision of the case, or is intertwined with the statutory remedy, the burden of proof is deemed substantive, and should be determined according to the otherwise applicable law. *Id.* As it turns out, it is not necessary for us to decide between Pennsylvania or Nevada rules governing the burden of proof, for, in either case, plaintiffs bear the burden of proving defendant's gross neglect.[4]

Under Pennsylvania law, everyone is presumed to exercise prudence and care. *Brown v. Jones*, 404 Pa. 513, 516–17, 172 A.2d 831, 833–34 (1961). It follows that the "burden of proof of the defendant's negligence—in the sense of being the burden of persuasion (or risk of non-persuasion)—is everywhere on the plaintiff, since he is asking the court for relief." *Sowizral v. Hughes*, 333 F.2d 829, 833 (3d Cir. 1964). The mere fact that plaintiffs suffered a loss while guests in defendant's hotel does not place the burden of proof upon defendant. "It is hornbook law that the mere happening of an accident does not entitle the injured person to a verdict; plaintiff must show that defendant owed him a duty and that that duty was breached." *Engel v.*

*Parkway Co.*, 439 Pa. 559, 562, 266 A.2d 685 (1970).

■ Under the Nevada Innkeepers Statute the burden of proof also rests upon plaintiff. The statute on its face, *see* text at pp. 1329–1330, *supra*, suggests that plaintiffs bear the burden of proving the innkeeper's gross neglect, for an innkeeper's liability for gross neglect is stated in the last clause of the statute as an exception to the general rule of nonliability for guests' losses. Moreover, burdening the innkeeper with proving an absence of gross neglect would be contrary to the statute's overall goal of limiting innkeepers' liability. The Fifth Circuit in *Owens*, 625 F.2d at 603, read the statute as placing the burden of proving gross neglect upon the plaintiff. We see no reason to depart from that court's interpretation.

If the Pennsylvania Innkeepers Statute were applicable, as plaintiffs argue, then defendant might have to bear the burden of proving compliance with the statute in order to avoid common law liability. *See* 1 *Jones on Evidence* § 5.19 (Gard ed. 1972). But, not only does Pennsylvania law not apply, we have determined that the Nevada Innkeepers Statute governs this action. In this posture, the issue is who will bear the burden of proof as to the presence or absence of gross neglect on defendant's part, and, as we have seen, that burden belongs to the plaintiffs.

---

**4.** In this case, plaintiffs bear the burden of producing evidence as well as persuading the fact finder of defendant's gross neglect.