## DECKER v. NEW YORK LIFE INS. CO.

No. 6120.   Decided August 14, 1939.   (93 Pac. 2d 689.)

M. E. *Wilson* and *Robert C. Wilson,* both of Salt Lake City, for appellant.

*Critchlow & Critchlow* and *A. W. Watson,* all of Salt Lake City, for respondent.

MOFFAT, Chief Justice.

In January, 1937, the District Court of the Third Judicial District first heard this cause. Upon that trial, the trial court sustained a demurrer of the plaintiff to the defendant's answer. Defendant elected to stand upon its answer. Thereupon the court entered judgment for plaintiff. Appeal by defendant was taken to this court which resulted in a reversal of the judgment of the District Court. The ruling which sustained plaintiff's demurrer to defendant's answer was reversed with instructions to set aside the order and judgment and admit the parties to proof. *Decker* v. *New York Life Insurance Company,* 94 Utah 166, 76 P. 2d 568, 115 A. L. R. 1377.

The cause was then tried resulting in a directed verdict in favor of the defendant. Plaintiff appeals. (The parties will be referred to as plaintiff and defendant.)

Plaintiff summarizes her assignments of error into a single important question, but suggests there are certain incidental questions also involved. The important question submitted by plaintiff is: Does the evidence establish as a matter of law a delivery of the policy of insurance by the insured to the insurer, the New York Life Insurance Company?

The defendant dissents from plaintiff's statement and puts the crucial question in another form, viz.: Is there any substantial evidence upon which the jury could, if permitted, find for the plaintiff under the pleadings? Or, would all reasonable men draw the same conclusion from the evidence and would that conclusion require a verdict for the defendant?

The difference between the stated positions of plaintiff and defendant is, defendant's position includes certain admissions or allegations in the pleadings as bearing upon the question which plaintiff's position, as stated, strictly interpreted would exclude, as will hereinafter appear.

The pleadings:

The complaint alleges and it is admitted that on or about the first day of June, 1922, the defendant entered into a contract of insurance with Feramorz Decker, the husband of the plaintiff, and that the defendant issued and delivered to Decker such contract, describing it by number, and the answer annexes thereto a copy of the policy. It is alleged that Feramorz Decker had fully kept and performed all the conditions, undertakings and obligations to be kept and performed, *"except that the quarterly premium of $31.00 due September 1, 1935, was not paid by the insured."* This allegation put the policy into a lapsed condition subject to certain provisions relating to different rights and privileges attaching during the period of default and after it had expired.

It is then alleged by the complaint and by the answer denied:

"6. That although the defendant well knew that said policy was in full force and effect, and that the same had not lapsed or been forfeited for non-payment of the premium due on September 1, 1935, the said defendant on October 3, 1935, falsely, fraudulently and mistakenly represented to the said Feramorz Decker that said policy had lapsed for the non-payment of premium, and falsely and fraudulently informed said Decker that it would be necessary for him to complete an application for reinstatement and furnish evidence of insurability satisfactory to the company before said policy would have any force or effect; that this statement made by said defendant company was false and untrue and known by the company to be false and untrue; that *said Feramorz Decker relied upon said statement and believed the same to be true, and in reliance thereon permitted said defendant company to obtain possession of said policy of insurance;* that the plaintiff is informed and believes, and therefore alleges the fact to be that said defendant company did not obtain possession of said policy at its home office in New York City, New York, until November 6, 1935." (Italics added.)

It may be noted that the allegations of the complaint go so far but no farther than to say, in so far as possession is concerned, *"that said Feramorz Decker relied upon said statement and believed the same to be true, and in reliance thereon permitted said defendant company to obtain possession of said policy of insurance."* It is further alleged and denied that the company *"unlawfully and wrongfully claimed that said policy of insurance had been canceled and terminated prior to the death of said Feramorz Decker."* (Italics added.)

Defendant's answer put in issue the allegations of the complaint, except admissions, as indicated and as a separate defense, among other things, alleged: The execution and delivery of the policy of insurance, and a copy thereof as an exhibit and alleged further a change in payment of premiums from an annual to a quarterly basis, the amount of a loan upon the policy, the remaining cash surrender value as of September 1, 1935, and that on or about the 26th day of October, 1935, and *within three months after the default* in

payment of premiums Feramorz Decker surrendered and delivered the policy of insurance to the defendant and requested payment to him of the cash surrender value and thereby elected to take and receive the cash surrender value of the policy as provided by the policy.

By reply, the plaintiff claimed the benefits of subdivision (7) of Section 43-3-24, Rev. Stat. of Utah, 1933, which reads as follows:

"It shall be unlawful for any life insurance company to issue or deliver in this state any life insurance policy unless the same shall contain the following:

*    *    *    *    *

"(7) A provision that in the event of default in the payment of any premium due on any policy, provided that not less than three full years' premiums have been paid, there shall be secured to the insured without action on his part the net value of the policy, in the form of either (a) paid up insurance, or (b) extended insurance, or (c) as a loan in payment of future premiums, so long as such net value, less the deduction herein provided for, is sufficient to secure such loan with interest added at a rate not exceeding six per cent per annum payable annually in advance. The net value applied to one of the options above provided for shall be at least equal to the entire net reserve held by the company on such policy, including dividend additions if any, less 2½ per cent of the amount insured by the policy and dividend additions, if any, or one-fifth of such reserve and less any outstanding indebtedness to the company on the policy at the time of default; provided, however, that such provision shall not be required in policies of term insurance of twenty years or less or in industrial policies."

This statute was pleaded to make pertinent and to bring into operation the third subdivision of Section 4 of the policy providing options for settlement after three full years' premiums have been paid. The provisions of the policy in this regard provide:

Section 4—Surrender Values:

"After three full years' premiums have been paid, the Insured may, at the end of any insurance year or within three months after any default in payment of premium but not later, surrender the Policy, and * * *

"(1) Receive its Cash Surrender Value; or

"(2) Receive the amount of non-participating paid-up insurance which the cash surrender value at date of default less any indebtedness hereon will purchase, payable at the same time and on the same conditions as this Policy, but without disability or double indemnity benefits. The Insured may at any time obtain a loan on such paid-up insurance, or surrender it for its cash surrender value; or

"(3) If the Policy be not surrendered for cash or for paid-up insurance within three months after default in payment of premium, its cash surrender value at date of default, less the amount of any indebtedness, shall automatically purchase Continued Insurance from the date of default for the face of the Policy plus any dividend additions and less any indebtedness to the Company. The Continued Insurance shall be without future participation and without the right to loans, cash surrender values, disability or double indemnity benefits. * * * *"

Then the reply, measurably at least, abandoning the allegations of fraud in the complaint alleged:

"That because of the relation existing between the insured and the defendant, the insured had great confidence and trust in said defendant, and because of defendant's invitation to repose confidence in it, and because of the nature of the statements contained in the * * * communication of October 3, 1935, [the subject matter of which was correct and is not here questioned] the insured relied upon said statement and believed the same to be true; That the defendant had full knowledge of the contents of the insurance statute of the State of Utah, and * * * that the insured did rely thereon and, believing and relying thereon, *delivered said policy of insurance to the branch office of the defendant company in Salt Lake City, Utah, on or about the 26th day of October, 1935;* that on what date said policy was delivered to the company at its home office in New York this plaintiff has no knowledge but upon information and belief she alleges that it did not arrive at said home office until after the death of said Feramorz Decker." (Italics added.)

The proof:

No evidence was offered by the plaintiff relating to the allegations of fraud. The pleadings fairly interpreted indicate that a policy of insurance had been issued by defendant to Feramorz Decker, that the only change made in the contract between the insured and the insurer was the change from yearly to quarterly payments. Plaintiff

having pleaded delivery of the policy after default had the burden of proving that if the insured was in default and had delivered the policy to the defendant, that there were still some conditions or provisions under which she still had some rights under the policy. Defendant's answer alleged more definitely the surrender and cancellation of the policy of insurance than did plaintiff's complaint. Defendant's answer did not displace the burden resting upon plaintiff nor relieve her from proving the allegations of her complaint, at least sufficient of them to make a prima facie case. The burden of proving the alleged fraud, which it was claimed was the inducing agency bringing about the delivery or surrender of the policy, was always upon the plaintiff. The allegation that the delivery and surrender of the policy was secured by fraud, with no proof of fraud, leaves the allegation of delivery standing as part of plaintiff's affirmative position.

Aside from the question of the burden of proof let us examine the evidence.

Barring some minor variations not affecting in any substantial manner what the evidence establishes, it appears that sometime in September, 1935, Feramorz Decker visited the home office of the defendant at the Walker Bank Building, Salt Lake City, Utah, and told Mr. Olsen, a clerk in the office, that he wanted to purchase another policy. Olsen testified that he told Decker that the policy that he had with the New York Life Insurance was better for him than a new contract taken out at his advanced age, because of the increased reserves in the old policy, and dividends that the company was paying would decrease the cost of his insurance. Decker left the office with the apparent intention of continuing the policy with the New York Life Insurance Company.

Between the 10th and 20th of October, 1935, Decker again appeared at the office of defendant. A conversation began between Mr. Olsen and Mr. Decker. During the conversation Mr. Tripp was brought into it. At that time Mr. Olsen filled

out what is denominated a "cash surrender request" on a printed form, filling in the number of the policy and the name of Feramorz Decker. As filled in and signed, the document read:

"New York Life Insurance Co., 51 Madison Avenue, Madison Square, New York, N. Y. The undersigned request the New York Life Insurance Company to pay the cash surrender value in settlement of policy No. 8211389 on the life of Feramorz Decker.

"(Signed) Feramorz Decker

"Dated at ——————.."

After signing his name to the document Decker took it away with him saying, "I want to keep it awhile."

On the morning of October 26, 1935, some days after the signing of the cash surrender request above quoted, as the witnesses Lawrence Olsen and Leonard O. Tripp opened and entered the office of the New York Life Insurance Company's Branch Office at the Walker Bank Building, Salt Lake City, they found upon the floor in the office area between the outside door and the business counter, a New York Life Insurance Company envelope like the one given to Feramorz Decker upon the occasion of the last conversation at the time of the signing of the cash surrender request. The envelope contained the cash surrender request that had been signed in the presence of Olsen and Tripp by Decker and also the Decker Life Insurance policy.

Plaintiff has summarized the evidence of the witness Tripp and Olsen relating to the above event as follows:

"It was in the lobby or the area designated for the policyholders outside of the counter on the floor. I saw it there on the floor in that space. It had either been placed there, pushed in under the door or inserted in the letter slot. It had fallen in that position. It was where it would have been if it had been thrown through the mail chute or in the door, or somebody had opened the door and thrown it in. There was nothing on the envelope that I recall. It was a No. 10. He [referring to Decker and another event] took the envelope with him. He had not mailed it to us. It was sealed. I picked it up and opened it. I open all the mail of the branch office. It was a routine thing. I saw it bore no mailing stamp. I did not know how it came there except

I knew without a stamp it could not go through the United States mail. We had not received our mail at that time."

Olsen testified:

"One of the other fellows found the envelope upon the floor of the office. The envelope was on the floor. I saw it. I saw one of the clerks in the office pick it up. I saw him take Exhibit 2 out of the envelope and the policy. It was a 10 size envelope. This man opened the envelope in my presence. We had some talk about it. The man who picked it up took it out of the envelope and took it over to the file clerk. I do not remember who it was. I believe it was Mr. Tripp, the cashier of the local office, the gentleman sitting here in the court room. I do not testify that I am sure he was the man who picked it up. I think it was he. I think he went to the file clerk but I am not sure. It was about 8:30 in the morning. I think it was on October 26, 1935."

The court properly directed a verdict in favor of the defendant. The pleadings and the evidence dictate no other or different result. The evidence is undisputed. The variations between the witnesses Tripp and Olsen are of such a nature as to lend verity to their testimony rather than to discredit it. The variations relate principally to the incidents occurring in the office on the 26th of October, 1935, and such variations are such as to preclude a concocted story or a rehearsal. One of the Canons relating to the examination of evidence is that minor variation with substantial agreement tends to import verity.

After default in the payment of the premium, the options provided in Section 4 of the policy became operative. The insured at the end of any insurance year or within three months after any default in payment of the premium and not later and after three years' premiums had been paid, had the right to surrender the policy and receive its cash surrender value, or surrender the policy and receive the amount of non-participating paid-up insurance with the cash surrender value at the date of default, less any indebtedness, would purchase. The exercise of the first or second of these options by the insured precluded the exercise of any of the others. The third option became effective only

in the event the insured exercised neither of the first two within the three months' period.

The exercise of either of the options become effective from the time exercised. No meeting of minds was required to entitle the insured to the option selected by him. The election to take the cash surrender value was one over which the insurer had no control. The request for the cash surrender value was made and was not recalled.

Plaintiff constructs and submits a masterful analysis of a proposition upon an untenable premise. Variations in the conflict in evidence of two or more witnesses does not necessarily create a conflict in the evidence nor raise a question of fact as to their credibility.

It is argued by plaintiff that because this court said on the former appeal that "Plaintiff has the right to require defendant to prove by evidence the allegations regarding the surrender of the policy" that the burden of proof rested upon the defendant to establish a surrender of the policy of insurance by the insured to the insurer. The statement was not necessary to a decision of the case. The thought evidently was that he who makes affirmative allegations has the burden of proving them.

There was no substantial evidence, when considered with the pleadings, upon which the jury could have found for the plaintiff. Under the allegations and proof all reasonable men would conclude that the insured had signed and sent on its way the cash surrender request and that during the lifetime of the insured it had not been recalled. Under such circumstances, a directed verdict for the defendant was proper.

Judgment affirmed. Costs to respondent.

WOLFE, LARSON, McDONOUGH, and PRATT, JJ., concur.