262 P.2d 789

**BROWN et al. v. ARRINGTON CONST. CO. et al.**

**No. 7992.**

Supreme Court of Idaho.

Oct. 30, 1953.

Taylor and Keeton, JJ., dissented.

Albaugh, Bloem, Barnard & Smith, Idaho Falls, for appellant.

W. K. Naylor, Idaho Falls, T. Harold Lee, Rigby, for respondents.

PORTER, Chief Justice.

Respondents brought this action to recover damages for personal injuries suffered by respondent, Jesse Brown. By their complaint, respondents alleged that such injuries were the result of shock and burns from an electric current which came in contact with Brown through the negligence of appellant. At the close of the presentation of all the evidence at the trial, appellant moved for a directed verdict which motion was denied by the court. The jury brought in a verdict against appellant in the sum of $5,000. Appellant made a motion for judgment notwithstanding the verdict which motion was denied by the court. Appellant has now appealed to this court from the judgment entered on the verdict of the jury.

About four miles south of Idaho Falls in Bonneville County is located Cotton Siding on the Union Pacific Railroad. Approximately one mile east of Cotton Sid-

ing, on what is known as Cotton Road, there is a bridge across the Idaho Canal. In April, 1950, appellant had a verbal contract with Bonneville County to construct a new bridge across this canal. Bonneville County had torn down the old bridge and dynamited the abutments, but had no ready way of removing the debris. The county arranged with appellant for the removal of such debris by a mobile dragline and operator furnished by appellant.

On the morning of April 21, 1950, defendant, Cecil Skinner, as operator, took the mobile dragline or crane to the site of the old bridge. He was there told by employees of the county to remove such debris by the use of his dragline; and that the heavy debris was to be loaded into trucks and the lighter debris piled for future use.

Along the south side of Cotton Road runs an electrical transmission line 28 feet in height and carrying 7,200 volts of electricity. Defendant Skinner located his dragline with its 40-foot boom on the south side of the road and on the east side of the canal and under the power line. The mobile dragline, due to insulation, was not dangerous to the operator from contact with the high voltage transmission line, but any such contact was dangerous to others on the ground. Skinner warned his oiler and some of the county employees, but not respondent Brown of such danger. The dragline came in contact with the transmission line on several occasions while the work was progressing and Skinner was dissatisfied with having to work in such a dangerous position with a 40-foot boom.

On April 22, 1950, the county sent respondent Brown with a road grader to build a detour around the bridge site so that the flow of traffic would be uninterrupted during the construction operations. He had some conversation with Skinner concerning the piling of the debris. About noon on April 22, Brown completed the construction of the detour, drove his machine a short way east along the highway and then on foot approached the dragline. According to the testimony of Brown the dragline was not in operation and the bucket was on the ground when he approached. He knew that it was dangerous to approach the dragline when it was in operation under the power line. He had a short talk with Skinner about the removal of some dirt and then started to leave the dragline. As he started to leave, Skinner put the dragline in operation and moved the bucket. Brown saw a corner of the dragline suddenly seem to be afire. He did not knowingly touch the dragline. Brown was knocked unconscious and thrown to the ground. He received burns and severe shock. In conflict with Brown's testimony, Skinner testified that he was operating the dragline as Brown approached and did not see Brown approaching until the accident, and did not talk with Brown immediately prior thereto.

Appellant makes seven assignments of error with subdivisions, but sets out four

general issues in the form of questions upon which it relies and which are discussed in its brief. The first question propounded is, "Was Cecil Skinner guilty of any negligence imputable to appellant?" In its brief on page 27, appellant says:

"The testimony of Brown as to how the accident happened, standing alone, might conceiv*eabley* sustain a charge of negligence on the part of the operator, based on the theory that the operator recklessly put the machine in motion, knowing that Brown was in a position of danger and of the likelihood of striking the power line."

Appellant then urges the testimony of Brown cannot be given any credibility because it is impeached by the testimony of his own witness, William Swain. An examination of the entire testimony of Swain does not sustain such contention. Under the conflicting evidence in this case the question of negligence on the part of Skinner was one of fact for the jury. Wheeler v. Oregon R., etc., Co., 16 Idaho 375, 102 P. 347; Carson v. Talbot, 64 Idaho 198, 129 P.2d 901; Mason v. Hillsdale Highway Dist., 65 Idaho 833, 154 P.2d 490.

Appellant further contends that negligence of defendant Skinner could not be imputed to appellant as Skinner was the servant of Bonneville County under the "loaned servant" doctrine. The testimony on behalf of appellant was to the effect that the dragline and operator were rented to the county on an hourly basis and that the removal of the debris was the work of the county and had no relation to the contract for the building of a new bridge. There is evidence to the contrary as the claim made by the appellant and approved and allowed by the county for the monies due under the contract show a lump sum of $100 for the removal of such debris and such $100 is set up as a part of the total contract price.

In Nissula v. Southern Idaho Timber Protective Ass'n, 73 Idaho 37, 245 P. 2d 400, a tractor and its operator were rented to defendant. We recognized that such operator remained the servant of the owner of the tractor as to his acts in handling and operating the machine, but was the servant of the defendant in placing the machine in a hazardous position to its damage upon the order of defendant. And we further said that as to the operator's acts in manipulating the machine, his relationship as servant of the general employer was not altered by the fact that he was subject to the control of the defendant as to where to go and what work to do. The quotation in such case from 1 Restatement of the Law of Agency, Sec. 227, seems particularly appropriate to the case at bar, and is as follows:

" 'A servant directed or permitted by his master to perform services for another may become the servant of such other in performing the services. He may become the other's servant as to some acts and not as to others.

" 'Comment:

" 'a. * * *

" 'b. Inference that original service continues. In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is. performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it.

" 'c. Factors to be considered. A continuation of the general employment is indicated by the facts that the general employer may at any time substitute another servant, that the time of employment is short, and that the lent servant has the skill of a specialist.

" 'A continuance of the general employment is also indicated in the operation of a machine where the general employer rents the machine and a servant to operate it, particularly if the instrumentality is of considerable value. Normally, the general employer expects the employee to protect his interests in the use of the instrumentality and these may be divergent from the interests of the temporary employer. If the servant is expected only to give results called for by the temporary employer and to use the instrumentality as the servant would expect his general employer would desire, the original service continues.' "

As to the facts necessary to establish the relationship of employer and employee see also Pinson v. Minidoka Highway Dist., 61 Idaho 731, 106 P.2d 1020; Laub v. Meyer, Inc., 70 Idaho 224, 214 P.2d 884; Lail v. Bishop, 70 Idaho 284, 216 P.2d 955; Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137.

■ Appellant urges that the facts not being in dispute, the court should have decided as a matter of law that Skinner was the servant of Bonneville County. It appears to us on the contrary that even under appellant's rental theory the court might well have held that Skinner remained the servant of appellant in the operation of the dragline. Skinner was employed and paid by appellant. Another employee could have been substituted. He was a skilled operator of a valuable and complicated machine and the time of employment was one and one-half days. Further, there was a conflict in the evidence as to whether such work was not done as an extra item in connection with the verbal contract for the building of the new bridge. We see no prejudicial error in the submission of the question to the jury.

The second question submitted by appellant is, "Was there any direct negligence on the part of appellant?" We presume appellant means negligence other than on

the part of the operator, Cecil Skinner. It having been determined there was sufficient evidence to go to the jury on the question of negligence on the part of Cecil Skinner imputable to appellant, it is unnecessary that the record also show other negligence on the part of the company. It may be pointed out, however, that the jury may have considered it negligent for the company to send its dragline with a boom the length of 40 feet to work under the high tension power line.

The third question asked by appellant is, "Was respondent Brown guilty of contributory negligence as a matter of law?" The burden of proof of contributory negligence was on appellant. The circumstances surrounding the accident as disclosed by the record and as recited herein are not such that the court can say that respondent was guilty of contributory negligence as a matter of law. The question of contributory negligence was one for the jury. Baldwin v. Ewing, 69 Idaho 176, 204 P.2d 430; Department of Finance v. Union Pac. R. Co., 61 Idaho 484, 104 P.2d 1110; Adkins v. Zalasky, 59 Idaho 292, 81 P.2d 1090; In re Estate of Randall, 58 Idaho 143, 70 P.2d 389; McIntire v. Oregon Short Line R. Co., 56 Idaho 392, 55 P.2d 148.

The final question submitted is, "Was the verdict so excessive as to be indicative of passion and prejudice?" Neither appellant nor respondents cite any authority to sustain their positions on this question. The evidence discloses that respondent Brown was a man of 45 years of age and in good health at the time of the accident. As a result of the accident he suffered severe shock and first and second degree burns on his hand, arm and feet and a bruised right shoulder. The medical testimony further shows that he probably had a nerve injury to his arm and neck and suffered from an "anxiety state" as a result of the electrical shock. The medical testimony as to the extent of the injury appears to be sufficient to sustain the amount of the award. There is nothing in the record which would indicate that the verdict of the jury was given under the influence of passion or prejudice. This court will not interfere with the verdict of the jury because of the amount of the award except in cases where abuse of discretion is clearly apparent. Hepp v. Ader, 64 Idaho 240, 130 P.2d 859; Gardner v. Hobbs, 69 Idaho 288, 206 P.2d 539, 14 A.L.R.2d 478; Garrett v. Taylor, 69 Idaho 487, 210 P.2d 386; Checketts v. Bowman, 70 Idaho 463, 220 P.2d 682; Koch v. Elkins, 71 Idaho 50, 225 P.2d 457.

By its supplemental brief, appellant raises an additional question. Appellant at all times contended that the dragline and operator were simply rented to the county on an hourly basis; and that Skinner was a "loaned employee" under the exclusive direction and control of the county. Re-

spondents, on the other hand, have contended that Skinner remained the servant of his general employer so far as the handling of the machine was concerned; and also that the evidence would sustain a finding that appellant performed the work as part of its contract. Appellant now makes the contention, in effect, that if it be determined respondents' position is correct, then recovery in this action is barred by the provisions of the Workmen's Compensation Law.

Section 72–204, I. C., reads as follows:

"When an injury for which compensation is payable under this act shall have been sustained under circumstances creating in some other person than the employer a legal liability to pay damages in respect thereto, the injured employee may, at his option, either claim compensation under this act or obtain damages from or proceed at law against such other person to recover damages; and if compensation is claimed and awarded under this act any employer having paid the compensation or having become liable therefor shall be subrogated to the rights of the injured employee to recover against that person: provided, if the employer shall recover from such other person damages in excess of the compensation already paid or awarded to be paid under this act, then any such excess shall be paid to the injured employee less the employer's expenses and costs of action."

Section 72–811, I. C., is as follows:

"An employer subject to the provisions of this act, shall be liable for compensation to an employee of a contractor or subcontractor under him or who has not complied with the provisions of section 72–801 in any case where such employer would have been liable for compensation if such employee had been working directly for such employer. The contractor or subcontractor shall also be liable for such compensation, but the employee shall not recover compensation for the same injury from more than one party. The employer who shall become liable for and pay such compensation may recover the same from the contractor or subcontractor for whom the employee was working at the time of the accident. This section shall be in force as to all contracts made subsequent to March 15, 1921."

Appellant contends that under the theory of respondents the County of Bonneville would be the principal and appellant would be the subcontractor with the employees of both engaged in a common labor, and that the subcontractor under the above statutes is not a third person against whom an action would lie by an employee of the principal.

We held in Lebak v. Nelson, 62 Idaho 96, 107 P.2d 1054, that suit could be maintained against a third party tort-feasor although compensation had been paid under the Workmen's Compensation Act. In Gifford v. Nottingham, 68 Idaho 330, 193 P.2d 831, we held that heirs of an employee of a subcontractor could not maintain a common-law death action against the principal contractor for the reason that by the provisions of the statutes, liability was placed upon the principal contractor to pay workmen's compensation to injured employees of subcontractor. In such situation the principal contractor is not a third person as contemplated by Section 72–204, I. C. No additional Idaho decisions germane to the question under consideration have been called to our attention.

In support of its position, appellant relies principally upon holdings in Massachusetts under statutes similar to those in Idaho. The Massachusetts court held in White v. George A. Fuller Co., 226 Mass. 1, 114 N.E. 829, that the general employer or contractor is made liable by the Massachusetts Workmen's Compensation Law to the employees of the subcontractor for compensation benefits and not subject to an action at law by the employee. White v. George B. H. Macomber Co., 244 Mass. 195, 138 N.E. 239, was decided on the same principle. The position taken by the Massachusetts court in the two mentioned cases is analogous to the position taken by this court in Gifford v. Nottingham, supra. In Cata-

lano v. George F. Watts Corp., 255 Mass. 605, 152 N.E. 46, the Massachusetts court went one step further and held that the insurer of a general contractor who had paid compensation to such contractor's employee injured by the negligence of an employee of a subcontractor could not recover the compensation paid from the subcontractor's surety. The decision was predicated on the statement that the employees of the general contractor are to receive no greater benefit than the employees of the subcontractor. In Bresnahan v. Barre, 286 Mass. 593, 190 N.E. 815, 817, the Massachusetts court held that an action for the death of an employee injured by a fellow servant on the project may not be maintained against such fellow servant as a third person and used the following language:

"One purpose of the Workmen's Compensation Act was to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer insured under the act, and not to preserve for the benefit of the insurer or of the insurer and those injured liabilities between those engaged in the common employment which but for the act would exist at common law. That is the broad ground underlying the decisions already cited."

As bearing on the question appellant cites also Younger v. Giller Contracting Co.,

143 Fla. 335, 196 So. 690; McGrath v. Northwestern Trust Co., 178 Minn. 47, 225 N.W. 901; Miami Roofing & Sheet Metal Co. v. Kindt, Fla., 48 So.2d 840.

A view contrary to the claimed right of immunity from suit by reason of "common employment" has been taken by the majority of the courts which have passed upon the question and to which our attention has been called. Benoit v. Hunt Tool Co., 219 La. 380, 53 So.2d 137, was an action by an employee of the principal against a contractor for injuries occasioned by the negligence of an employee of the contractor. After recognizing that a suit would not lie by the employees of the contractor against the principal, the Louisiana court held that the action before it was maintainable, saying on page 144 of 53 So.2d:

"Respondents argue that we should construe the compensation act so as to deny to an employee of the principal a right of action for damages against the contractor, for the reason that it is not in accordance with the principles of the Workmen's Compensation Act that, of two men working shoulder to shoulder, one, being the employee of the principal, should be entitled to more benefits and greater advantages than the other. This is a matter for the Legislature and not for the courts, and we have no authority to deprive such an employee of the rights given him under Article 2315 of the Code. No provision of the compensation act deprives the plaintiffs, the employees of Morris & Meredith, the principal, of their action in tort against Hunt Tool Company, which is a third party within the meaning of the compensation act."

For holdings to the same effect with discussions of the subject, see Robinson v. Atlantic Elevator Co., 298 Pa. 549, 148 A. 847; Dillman v. John Diebold & Sons Stone Co., 241 Ky. 631, 44 S.W.2d 581; Olsen v. Sharpe, 191 Tenn. 503, 235 S.W. 2d 11.

■■ The principal being liable by statute for payment of compensation to the injured employees of subcontractor, we have properly held that the principal is not a third person within the meaning of the statute. However, the statute creates no liability on the part of the subcontractor to pay compensation to an injured employee of the principal. Their common-law relationship is not altered. The statute should not be extended by construction to abrogate this common-law relationship as the statute does not expressly so provide or necessarily so imply. We are of the opinion that a subcontractor is a third person against whom a suit will lie by an employee of the principal for injuries occasioned by the negligence of the subcontractor's employee although the employees are engaged in common employment.

■ In the dissenting opinion being filed herein, it is contended that a recovery in this action is barred because of alleged

negligence or contributory negligence on the part of the county in causing the dragline to be located and operated in an unsafe place. Negligence or contributory negligence on the part of the county in the location of the dragline is not pleaded as a defense in the answer of either of defendants. Such theory was not presented during the trial of the cause. No specification of error raises such issue and such question is not mentioned or discussed in the briefs of appellant. Furthermore, the transcript does not disclose any direction by Bonneville County as to where the dragline should be located, or that such location was selected by anyone other than defendant Skinner. We do not conceive that the question so raised in the dissenting opinion is before us in the consideration of this cause.

The judgment of the trial court is affirmed. Costs awarded to respondents.

GIVENS and THOMAS, JJ., concur.

TAYLOR, Justice (dissenting).

Prior to the advent of the Workmen's Compensation Law, rights and liabilities arising out of injuries to workmen were adjusted and settled in negligence actions. It is well known to the bench and bar, and to laymen as well, that verdicts were often unjustly denied, inadequate, excessive, or the result of passion, prejudice, or sympathy. The administration of justice in such cases failed because of the human element involved, and because it was fettered by ancient rules and restrictions entirely unsuited to the ends of justice in a modern industrial community. In addition the expense and delay inherent in such proceedings became intolerable. A remedy became imperative and the Workmen's Compensation Law was designed for that purpose. The legislature in its preamble to the act left no doubt of its purpose to take over the entire field to the exclusion of all prior remedies.

. "The common law system governing the remedy of workmen against employers for injuries received in industrial and public work is inconsistent with modern industrial conditions. The administration of the common law system in such cases has produced the result that little of the cost to the employer has reached the injured workman, and that little at large expense to the public. The remedy of the workman has been uncertain, slow and inadequate. Injuries in such employments formerly occasional have become frequent and inevitable. The welfare of the state depends upon its industries, and even more upon the welfare of its wageworkers. The state of Idaho, therefore, exercising herein its police and sovereign power, declares that *all phases of the premises are withdrawn from private controversy,* and sure and certain relief for injured workmen and their families and dependents is here-

by provided regardless of questions of fault and *to the exclusion of every other remedy, proceeding or compensation, except as otherwise provided in this act, and to that end all civil actions and civil causes of action for such personal injuries, and all jurisdiction of the courts of the state over such causes are hereby abolished, except as is in this act provided.*" (Emphasis added.) § 72–102, I.C.

The act then proceeds to provide specific compensation for the injured workman and his dependents in a speedy manner, free from the delay and uncertainty of jury trials. It relieved him from the necessity of establishing negligence, and from the defenses of contributory negligence, assumption of risk, or the fellow servant doctrine, thus providing compensation in cases which previously were without any remedy. In addition the expense was reduced to a minimum. In return for these benefits the workman is required to forego the possibility of a larger verdict in a case where negligence would entitle him to recover; or what was left of the verdict after the expenses of prosecuting his cause in the courts. On the other hand the employer and industry is required to carry a heavier burden in greater outlay to injured workmen and their families because of the broadened scope of compensable injuries. For this industry is, in part at least, compensated in being relieved from the uncertainty, delay and expense of jury trials, and the danger of excessive verdicts, which in the case of a small employer could permanently close his business. Under the act it becomes possible for industry to budget its costs of operation to include the compensation it will be required to pay. Through the spreading of payments over a period of time and by means of premiums for liability insurance, the whole of industry is constantly paying for benefits without shock of a large lump-sum payment, unplanned for.

That it was the intention of the legislature to make the remedies provided by the act exclusive of all others is further emphasized by § 72–203, I.C., as follows:

"The rights and remedies herein granted to an employee on account of a personal injury for which he is entitled to compensation under this act shall *exclude all other rights and remedies* of such employee, his personal representatives, dependents, or next of kin, *at common law or otherwise,* on account of such injury." (Emphasis added.)

That the act is intended to be exclusive of all other remedies is also recognized by the courts of other states construing similar statutes. While some of the courts have said they do not recognize the exclusion of a particular common-law remedy, unless the exclusion is specifically provided for, most jurisdictions have accepted the declared purpose of the legislature and construe the act to be exclusive of all other remedies, except such as are specifically

reserved or provided for. As early as 1913 the supreme court of Washington, construing the same provision contained in our § 72–102, I.C., said:

"All causes of action theretofore existing, except as they are saved by the provisos of the act, are done away with." Peet v. Mills, 76 Wash. 437, 136 P. 685, 686, L.R.A.1916A, 358, Ann. Cas.1915D, 154.

Subsequently, that court, in Koreski v. Seattle Hardware Co., 17 Wash.2d 421, 135 P.2d 860, 862, and in Boeing Aircraft Co. v. Department of Labor and Industries, 22 Wash.2d 423, 156 P.2d 640, 646, again referring to the "declaration of police power", identical (so far as material here) with our § 72–102, holds that all causes of action for injuries, sustained in industrial accidents, are abolished, "except in those cases where the act expressly preserves or creates a right of action; and in such cases the rights of action are purely statutory, and not common law rights."

In such states as Montana, New York, Oregon and Washington, the statutes provide specifically that the third party must be one "not in the same employ". However, they recognize that the statute destroys all common-law actions not expressly reserved. Bruce v. McAdoo, 65 Mont. 275, 211 P. 772, 776; Black v. Northern Pacific Ry. Co., 66 Mont. 538, 214 P. 82; Clark v. Olson, 96 Mont. 417, 31 P.2d 283; Hoffman v. Johnston, 120 Mont. 231, 181 P. 2d 792, 793 (After amendment of Montana statute saving right to sue where "cause of such injury has no direct connection with his regular employment".) ; King v. Union Oil Co., 144 Or. 655, 24 P.2d 345, 25 P.2d 1055; Inwall v. Transpacific Lumber Co., 165 Or. 560, 108 P.2d 522; Brown v. Underwood Lumber Co., 172 Or. 261, 141 P.2d 527; Atkinson v. Fairview Dairy Farms, 190 Or. 1, 222 P.2d 732; Kowcun v. Bybee, 182 Or. 271, 186 P.2d 790. In the Kowcun case after reviewing cases from other states, including New York and Washington, the Oregon court said:

"It seems evident that by adding the phrase, 'not in the same employ' after the term, 'a third person,' our legislature sought to avoid the effect of the Pennsylvania and the Wisconsin decisions. It will be recalled, however, that the New York statute says that the injured workman's right to compensation shall be his 'exclusive remedy' if he is injured 'by the negligence or wrong of another in the same employ.' Our act does not employ the term 'exclusive remedy.' We think, however, that our practice has constantly deemed the remedy afforded by our act as the exclusive remedy available to the injured workman except in the instances where the act affords an alternative remedy." Kowcun v. Bybee, 182 Or. 271, 186 P.2d 790, at page 799.

"An injured workman cannot have both an award of compensation and an action for damages against a purport-

ed tort-feasor except in the specific instances mentioned in the act. In all cases, except the rare exceptions set forth in the act, compensation, and that alone, is the measure of recovery. Compensation, unless an injured workman can bring himself within an exception, is the exclusive remedy." Kowcun v. Bybee, 182 Or. 271, 186 P.2d 790, at page 801.

In North and South Carolina and Virginia, the exemption to the employer is extended by words such as "or those conducting his business." The saving clause granting the injured employee a right of action, however, is not so broadened. It is like our own; "any person other than the employer". In Warner v. Leder, 234 N.C. 727, 69 S.E.2d 6, 9, the president and executive officer of the corporate employer was held immune from action by injured employee. The court said; " 'any person other than the employer,' means any other person or party who is a stranger to the employment". In Nolan v. Daley, 222 S.C. 407, 73 S.E.2d 449, the South Carolina supreme court quotes from and follows Warner v. Leder, in holding that an injured employee cannot maintain action against a coemployee. The supreme court of appeals of Virginia emphasizes, in Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73, the exclusiveness of the compensation act by reference to the definition of compensable injury, holding:

"An accidental injury caused by employer's negligence or by negligence of fellow servant 'arises out of and in course of employment' so that proceeding for workmen's compensation is the only remedy."

It also held that "any other party" means "a stranger to the business." The Virginia court makes a clear statement of the theory and purpose of workmen's compensation legislation:

"The Workmen's Compensation Law has passed the experimental stage. It is as essential to industry as it is to labor. It comprises one of the most important branches of law. Upon its effectiveness depends the potential welfare of a large number of employees and their families. It places upon industry as an expense of the business the pecuniary loss, measured by the compenation provided in the statute, attendant upon all accidents to employees *within the hazards of the industry.* [Emphasis added.] It extends the employer's liability to all accidental personal injuries 'arising out of and in the course of the employment,' the expense of which is added to the cost of production. The employer surrenders his right of defense on the ground of contributory negligence and the common-law doctrines of the assumption of risk and fellow servants. The rules of evidence are relaxed. The

employee surrenders his right to a trial by jury and agrees to accept an arbitrary amount fixed by statute in lieu of full compensation for the injuries sustained. He gains a wider security. The issue of negligence or non-negligence of the employer and the fellow servants is eliminated. Long, costly and delayed litigation is avoided. A smaller but speedier recovery is guaranteed. This theory of compensation for accidental injuries has been accepted by practically all of the States as well as the United States and its possessions. The application of particular phases of the law in the different States depends upon the peculiar wording of the pertinent statutes.

"It is apparent from a review of the compensation laws in the different states that the chief benefit of the law to the employees is the abolition of negligence as a prerequisite to recovery and of the common-law defenses as a means of defeating recovery.

"While negligence is eliminated as a basis for recovery, industrial accidents still occur as a result of negligence and it may be said to be the chief cause of them. This negligence may be the act or omission of the employee himself, of another employee within the scope of the same business, or of a stranger outside the scope of the business.

"It is clear that where the negligence causing the injury is that of a stranger to the business, the employee should not, and is not, deprived of his common-law right of action against such stranger for the reason that, though the accident may arise out of and in the course of the employment, the dominant cause of the accident is not inherent in the business and is not a loss which the act contemplates that the industry should ultimately bear. As to the employee, the injury is an industrial accident primarily, but, inasmuch as he was on his master's business at the time and was injured by a stranger to the business, it is not truly and inherently within the industrial field.

"It is plain that compensation is the only remedy where the employer's negligence is the cause of the injury. It is equally plain that where the accidental injury is due to the negligence of a fellow servant, it arises out of and in the course of the employment and is a risk inherent in the business caused to one within the employment by another within the employment. On both bases, the injury is within the field of industrial accidents, and it was the purpose of the act to cast the loss upon the business as an ultimate expense thereof." Feitig v. Chalkley, 185 Va. 96, 38 S.E.2d 73.

See, also, Sykes v. Stone & Webster Engineering Corp., 186 Va. 116, 41 S.E.2d 469; Coker v. Gunter, 191 Va. 747, 63 S.E.2d 15; Phillips v. Brinkley, 194 Va. 62, 72 S.E.2d 339.

Utah accepts the exclusive theory of workmen's compensation as between co-employees. Decker v. New York Life Ins. Co., 97 Utah 453, 93 P.2d 689; Koch v. Telluride Power Co., 116 Utah 237, 209 P.2d 241. Likewise, New York. Behan v. Maleady, 249 App.Div. 912, 292 N.Y.S. 540; Puccio v. Carr, 177 Misc. 706, 31 N. Y.S.2d 805, affirmed 263 App.Div. 1042, 33 N.Y.S.2d 684.

The supreme court of Florida in construing the provision of the Florida act, F.S.A. § 440.39, substantially the same as our § 72–811, I.C., says:

"This section of the act imposes a statutory liability on the general contractor where the subcontractor has failed to secure the payment of compensation to his employees, and the general contractor is the *statutory employer* of all employees engaged in the common enterprise. (Emphasis added.)

There the saving clause is the same as ours: "some person other than the employer." The action was by an employee of the general contractor against a subcontractor for negligence of an employee of the subcontractor. The reasoning of the court is directly applicable to our statute:

"Plaintiff contends, and he is supported by authority, that inasmuch as the obligation of securing equal benefits is imposed upon the general contractor, he is immunized from common-law liability to employees injured in work on the common enterprise. With this we are in accord, but we cannot agree with plaintiff when he attempts to carry this theory one step further and say that inasmuch as no such general liability is imposed upon the subcontractor, the consequent immunity cannot be applicable to him. It is not in accordance with the controlling principles of workman's compensation that of two men working shoulder to shoulder, one, being the employee of the general contractor, should be entitled to more benefits and greater advantages than the other.

"The intention of the legislature in amending section 10(a) was to abrogate the common law to the extent of making all of the employees engaged in a common enterprise statutory fellow servants. They were never to be considered inter se third parties as to each other or to the immediate contractual employers. All workers engaged in such common enterprise were brought within the protection of the Workmen's Compensation Act where they might obtain equal benefits as provided by the act without the necessity

of resorting to a common-law action to accomplish this result. We cannot garner any other meaning from the statute except that the employees of the subcontractor and the general contractor were to be on an equal footing.

"Try as we may, we cannot but reach the same conclusion as was arrived at by the circuit judge in his recitation that the intention of the legislature as clearly disclosed by the amendment was 'to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer, and to provide for all employees, whether of a general contractor or its subcontractors, equal rights and benefits under the Act, and to give to none of these employees greater rights than others employed in the same common business or establishment might or could have pursuant to the provisions of the statute. * * *'

"The subcontractor is not 'some person other than the employer' against which 'third person' a common-law action for damages may be maintained." Younger v. Giller Contracting Co., 143 Fla. 335, 196 So. 690, at page 693.

See, also, Brickley v. Gulf Coast Const. Co., 153 Fla. 216, 14 So.2d 265; Miami Roofing & Sheet Metal Co. v. Kindt, Fla., 48 So.2d 840; and State to Use of Reynolds v. City of Baltimore, Md., 86 A.2d 618.

It is agreed that the Massachusetts statute for all purposes of the present case is the same as our Idaho statute. The only difference is the use of the word "insured" in their saving clause, where in our statute "employer" appears. The highest court of that state has passed upon the question here involved and related questions a number of times, and has held that the common-law right of action is abolished by the compensation act as to all parties engaged in the same employment. There the court has used the test—was the activity of the negligent party a "part of, or process in" the business of the common employer or general contractor. If it was, he is engaged in the common employment and is entitled to the same immunity from suit as the common employer. Accordingly, that court has held the exemption extends to a coemployee, subcontractor, or employee of a subcontractor. Catalano v. George F. Watts Corp., 255 Mass. 605, 152 N.E. 46; Bresnahan v. Barre, 286 Mass. 593, 190 N.E. 815; Dresser v. New Hampshire Structural Steel Co., 296 Mass. 97, 4 N.E.2d 1012; Caira v. Caira, 296 Mass. 448, 6 N.E.2d 431; Pimental v. John E. Cox Co., 299 Mass. 579, 13 N.E.2d 441; Clark v. M. W. Leahy Co., 300 Mass. 565, 16 N.E.2d 57; Carlson v. Dowgielewicz, 304 Mass. 560, 24 N.E.2d 538; Meehan v. Gordon, 307 Mass. 59, 29 N.E.2d 759;

Murphy v. Miettinen, 317 Mass. 633, 59 N.E.2d 252; Thomas v. Fritz, 318 Mass. 622, 63 N.E.2d 357; Bencivengo v. Walter C. Benson Co., 319 Mass. 110, 64 N.E.2d 918; Wechsler v. Liner, 328 Mass. 152, 102 N.E.2d 92.

In Ohio a constitutional provision similar in effect to our § 72–102, I.C., was construed in actions brought by an employee against a foreman of the same employer. Landrum v. Middaugh, 117 Ohio St. 608, 160 N.E. 691; Rosenberger v. L'Archer, Ohio App., 31 N.E.2d 700, 701. In the latter case the court said:

"* * * the employe whose act causes the injury or death of a co-employe of a complying employer, is protected from liability to the same extent that his employer is—that the two are merged and are identical within the terms of the constitutional provision. The constitutional mantle that shields the employer also protects the agency or instrumentality through which the employer acts. This is necessary to give effect to the constitutional purpose."

Can any different reasoning be applied to a coemployee or a subcontractor than is applicable to a foreman? Each, while acting within the scope of his employment, agency or contract, is an arm or instrumentality through which the employer accomplishes the object of the common employment. As the Ohio court said, they are merged in the employer, and are not "some person other than the employer".

In Lessley v. Kansas Power & Light Co., 171 Kan. 197, 231 P.2d 239, and Primm v. Kansas Power & Light Co., 173 Kan. 443, 249 P.2d 647, the Kansas court, construing the provision of the act imposing liability on the principal employer to pay compensation to employees of subcontractors (not essentially different from our § 72–811, I.C.), holds the employees of the subcontractor are employees of the principal and their exclusive remedy is compensation.

This broad concept of the employer-employee relationship under the compensation act is borne out by the definitions of employer, employee, and employment given by the legislature in the act itself. §§ 72–1010, 72–1011 and 72–1015. Especially § 72–1010, referring to "employer":

"* * * It includes the owner or lessee of premises, or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed. * * *"

This gives meaning to the expression in § 72–811, I.C., making the employer liable for compensation to the employee of subcontractor "where such employer would have been liable for compensation if such employee had been working *directly for such employer*." (Emphasis added.) In

other words, the employee of the subcontractor is indirectly an employee of the general employer. Thus the general contractor or employer is, for all purposes of the act, the statutory employer of all employees on the job which he undertakes, whether they be directly employed by him, or indirectly in his employ through a subcontractor. All employees on the same job are as to each other fellow servants or coemployees.

This being the relationship created by the statute, it follows that the majority opinion would permit an injured employee to maintain an action against his coemployee though both were directly in the same employ. In my search I have found only a few jurisdictions which have reached that absurd result. Instead of reducing the burden of the employee, the burden is increased. Take the case of an employee whose negligence concurs with that of the employer to produce the injury. The employer is protected by the act, but the negligent employee is alone liable, and without the backing of his joint tort-feasor in defending the action. I cannot believe that such a result was remotely contemplated by the legislature. To me the act expressly provides otherwise.

"* * * all phases of the premises are withdrawn from private controversy * * * to the exclusion of every other remedy, proceeding or compensation * * * and to that end all civil actions and civil causes of action for such personal injuries, and all jurisdiction of the courts of the state over such causes are hereby abolished * * *." § 72–102, I.C.

and the remedies provided by the act "shall exclude all other rights and remedies * * * at common law or otherwise". § 72–203, I.C. The compensation is expressly provided for "an accident arising out of and in the course of any employment covered by the Workmen's Compensation Law", and "accident" is defined as an "untoward event, happening suddenly and connected with the industry in which it occurs". § 72–201, I.C.

Here the "industry" was the replacement of a bridge on a county road. The accident arose out of, and in the course of that employment and was connected with that industry. That industry has paid the compensation required by the compensation law as a part of the cost of carrying on the industry. Thus, the industry involved has paid the bill in full, as contemplated by the act. But, now, by the majority opinion, that same industry is required to again respond, this time in damages, because the negligent fellow employee was only an indirect employee of the county and the immediate employee of a subcontractor. Such reasoning defeats the plain purpose of the act. Section 72–811, I.C., expressly provides, "but the employee shall not recover compensation for the same injury from

more than one party." The word "party" in that section expressly refers to employer, contractor, and subcontractor.

We have always held that statutes in pari materia must be construed together. Certainly this rule should be applied to the several sections of the one law dealing with workmen's compensation. The words in section 72–204, I.C., "some other person than the employer" must be construed in the light of these other provisions of the act and the declared purpose of the legislature. When so construed "employer" as there used must be held to be synonymous with the employment, and all those who, by contract of employment or subcontract, are directly engaged in that employment. It was obviously intended that all employees working on the same job for the same general employer should all enjoy the same benefits.

But we need not resort to the rules of construction to arrive at the definition of a word used in a statute, when the legislature, in the very act in which it used the word, has spelled out its meaning. The courts are not at liberty to limit the meaning of a term used by the legislature, when that body has expressly defined the term as used by it. 50 Am.Jur., Statutes, §§ 261–264; Sakrison v. Pierce, 66 Ariz. 162, 185 P.2d 528, 173 A.L.R. 480. Here the legislature defined the word "employer", as used by it in the compensation law, to include "the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor, or for any other reason, is not the direct employer of the workmen there employed." § 72–1010, I.C. Under this definition the county was the employer of Skinner. From this definition it conclusively appears that the common-law right of action, saved and intended to be saved from abolishment by section 72–204, I.C., must be held to refer to the right against a truly "third party", a "stranger to the business", one who is not working for the common employer.

It is not a question (as suggested by the majority) of abrogating, by construction of the statute, the common-law relationship between the subcontractor and the employee of the principal. The legislature has expressly abolished that relationship, and has "withdrawn from private controversy" "all phases of the premises". But now the court, by its construction of the word "employer" in section 72–204, I.C., ignoring all other provisions of the act, and abrogating the definition of "employer" given by the legislature itself, § 72–1010, has restored to the field of private controversy a large part of the litigation arising out of industrial accidents. It has restored all causes arising between fellow employees, and between employees and subcontractors.

In addition to the foregoing, there is another question involved. It is clear from the evidence that the county had the authority, under the arrangements it made with the Arrington Construction Company,

to direct Skinner as to the work he should do at the site. And the county did actually direct him as to the material to be moved by the dragline and where he should place it. It is also conclusive from the record that the county could have discontinued his employment and sent him and the machine off the job at any time had he refused to comply with its directions in such matters, or for no reason at all. It is also clear that the county directed Brown to construct a by-pass on the north side of the road, and Skinner, being directed to dump the excavated concrete into the county's trucks on the roadway, was required to locate his dragline on the south side of the road under the high tension line. In other words, the county provided Skinner with an unsafe place to work. Nissula v. Southern Idaho Timber, etc., 73 Idaho 37, 245 P.2d 400, is authority for the proposition that where a machine is hired with an operator, as to those acts involving skill, competency and care in the handling of the machine itself, the operator remains the employee of the owner, and as to those acts in which he is subject to the direction and control of the employer on whose job he is immediately working, he is the employee of the latter.

Conceding there is evidence of negligence on the part of Skinner as to the manner in which he manipulated the machine itself, which would be imputable to the Arrington Construction Company, it must also be conceded that there was negligence on the part of the county in providing an unsafe place for the machine to operate, in view of the nature of the work and the manner of its performance, and as to which he was under its direction and control. The question as to whose servant Skinner was in performance of this work, was submitted to the jury under proper instruction. But, although the court did instruct that "He may become the other's servant as to some acts and not as to others," the jury was not advised as to the effect of a divided agency. That is, where he may have been the servant of the Arrington Construction Company as to some acts and the servant of the county as to others.

In fact, the court instructed the jury that they were not to consider workmen's compensation, or the interests, if any, in the case of the county or its insurer. (The insurer is a plaintiff, and the county is a nominal defendant.) Apparently, the court has reserved the entire question. However, since it clearly appears that there was negligence on the part of the county in matters over which it had control, which contributed to the injury, and without which the injury would not have occurred, and such negligence, being independent of and not imputed to the county because of any alleged contributory negligence on the part of Brown, and which negligence on the part of the county was also independent of any negligence on the part of Skinner, neither Brown, his employer, nor its insurance carrier, is entitled to recover the amount of the

compensation award. In other words, where independent negligence on the part of the employer contributes to, or combines with, the negligence of the defendant to cause the injury, and where the employer and the third party defendant are not joint tort-feasors, but are severally liable as independent tort-feasors, and the negligence of the employer is not merely such as is imputed to him from negligence of the injured employee, the employer's negligence is a pro tanto defense available to the third party. The case of Essick v. City of Lexington, 232 N.C. 200, 60 S.E.2d 106, and Id., 233 N.C. 600, 65 S.E.2d 220, is in point on both law and facts. The reasoning underlying the rule, and which expresses the views of the writer on this phase of the case, is very clearly and forcefully set out by the North Carolina court in Poindexter v. Johnson Motor Lines, 235 N.C. 286, 69 S.E.2d 495; and Lovette v. Lloyd, 236 N.C. 663, 73 S.E.2d 886. See, also, 71 C.J., Workmen's Compensation Acts, § 1611, and subsequent annotations; 58 Am.Jur., Workmen's Compensation, § 359 and annotations; Woodland v. Portneuf Marsh, etc., Co., 26 Idaho 789, 146 P. 1106; Verheyen v. Dewey, 27 Idaho 1, 146 P. 1116. The liability is otherwise, at the election of the injured party, in the case of joint tort-feasors. Lorang v. Hays, 69 Idaho 440, 209 P.2d 733.

Furthermore, Skinner being an employee of the county as to the part of his work in which he was subject to its control, the effect of the decision in this case is to make the employer liable to both compensation under the statute and damages at common law.

The judgment should be reversed and the cause dismissed.

KEETON, J., concurs.