Ellen HAYS, Plaintiff and Appellant,

v.

FIDELITY INDUSTRIAL CREDIT COMPANY OF OGDEN and North American Life and Casualty Company, an Insurance Corporation, Defendants and Respondents.

No. 14195.

Supreme Court of Utah.

May 7, 1976.

Pete N. Vlahos and David J. Knowlton, of Vlahos & Knowlton, Ogden, for plaintiff-appellant.

Allen H. Tibbals, of Tibbals & Staten, Salt Lake City, for No. Amer. Life.

Carl T. Smith and Donald J. Little, Ogden, for Fidelity Indus. Credit.

MAUGHAN, Justice:

Plaintiff, the widow of Marvin E. Hays, initiated this action to recover as beneficiary the face amount of a policy of insurance on the life of her deceased husband. The defendant insurer was granted a motion for summary judgment on the ground that decedent prior to his death had surrendered the policy for its cash value. Plaintiff appeals. We affirm the judgment of the trial court.

The questions here are, whether the insured was an offeree; and, if so, did he make an effective acceptance of the offer extended by the insurer.

Marvin E. Hays was the owner and insured of a policy of insurance issued by defendant on July 8, 1965. The policy had a face value of $5,000 and granted the owner the right to surrender the policy at any time for its cash surrender value. In March of 1972, Mr. Hays inquired through Ron Jensen of Fidelity Industrial Credit Company of Ogden as to the adjusted cash value of the policy. The insurer responded by a letter in care of Ron Jensen that the cash value was $283.13. The defendant enclosed a surrender form and instructions as to manner in which the form should be executed, with directions the policy should be sent with the form.

On March 24, 1972, Mr. Hays executed the forms, which were mailed with the policy to defendant. Defendant received the form and policy at its home office in Minneapolis, Minnesota, on March 27, 1972. This same day, Mr. Hays died at 10:30 a. m., Mrs. Hays contacted Fidelity Industrial Credit Company of Ogden, and demanded it notify the insurer to cancel the surrender. Subsequently, defendant

issued a check in the amount of the cash value, payable to the insured, Marvin E. Hays. Plaintiff received the check and cashed it.

The trial court ruled the demand of the owner-insured, Marvin E. Hays, for the cash value of the policy, was effective when the policy was returned with the necessary forms; executed pursuant to instructions; delivered to the local representative; and forwarded to defendant's home office. Further, no person, with authority to do so, had acted upon this matter; and the defendant insurer had no discretion other than to pay the cash value of the policy, in accordance with its terms and the action of the owner-insured.

On appeal, plaintiff contends the insurer had not accepted the insured's offer of surrender, at the time of the death; that the beneficiary had effectively withdrawn this offer prior to acceptance. This theory is antithetical to the view adopted by this court in *Decker v. New York Life Insurance Co.*[1] wherein this court quoted extensively from *Pacific States Life Insurance Co. v. Bryce.*[2] In *Bryce*, plaintiff urged the insured's execution of a surrender agreement was an offer which lapsed, because the surrender value was not paid by the insurer prior to the insured's death.

The response, in *Bryce*, was such construction did not comport with the contract, because it reversed the position of offeror and offeree. The offer of surrender contained in the policy contract was from the company to the insured; the option was in the insured not the company. The insured's acceptance completed the contract, and the company had no right to accept or reject, because its obligation to pay was absolute. To construe the insured's exercise of his option as an offer to the company, subject to rejection, would distort the plain terms of the contract, and deny the insured a right for which he had paid. The court further observed that if there were ever a right to rescind the contract, by which the insured became entitled to the surrender value, it was not one which could be exercised by the beneficiary of the surrendered policy.

In *Decker*,[3] the fact was the insured sent the policy in with a request for the net due him from his reserve. Such action was an unequivocal election to terminate the policy, and accept its cash surrender value. It was an unfortunate turn, in view of his unexpected demise shortly thereafter. The court said:

. . . But that fact cannot affect the election. He gave up his policy, made his election to take the cash surrender value, and the company could do nothing else than to send it to him or his personal representative. It had no choice. He or his representative could enforce the duty by suit. . . .

This position was reiterated in the second appeal of *Decker*.[4]

The exercise of either of the options become effective from the time exercised. No meeting of minds was required to entitle the insured to the option selected by him. The election to take the cash surrender value was one over which the insurer had no control. The request for the cash surrender value was made and was not recalled.

This court held, under the allegations and proof, all reasonable men would conclude the insured had signed and sent on its way the cash surrender request, and during the lifetime of the insured such had not been recalled.

The rulings in both *Decker* cases are consistent; with the fundamental rule, viz., an option contained in a life insurance policy is a continuing and irrevocable offer; which becomes a binding contract

1. 94 Utah 166, 76 P.2d 568, 115 A.L.R. 1377 (1938).

2. (C.A.10th 1933) 67 F.2d 710, 91 A.L.R. 1446.

3. At p. 180 of 94 Utah, at page 575 of 76 P.2d.

4. 97 Utah 453, 462, 93 P.2d 689, 693 (1939).

when accepted by the insured. The subsequent death of the insured is irrelevant to the effectiveness of the election.[5]

The further contention of plaintiff that, as beneficiary, she had a vested right, which could not be affected by the subsequent actions of the insured, is not valid. Again, such a theory does not comport with the contract, nor our case law. The policy provided:

*Ownership*

The Insured shall be the Owner of this Policy, unless otherwise provided. With the exception of the benefit payable at the death of the Insured to the Beneficiary, the Owner, subject to the rights of any assignee, shall have all rights, privileges and benefits contained in this Policy.

And in the first appeal of *Decker*:[6]

At all events, the rule seems to be clearly established by authority and comports with reason and the law of contract that when the insured contracts that he may exercise certain rights without the consent of the beneficiary, he may do so even to the extent of entirely destroying whatever rights she may have, whether vested, contingent, inchoate, or expectant; and we so hold.

A review of the instant record reveals:

There was no genuine issue as to any material fact, thus defendant insurer was entitled to judgment as a matter of law.[7] The ruling in favor of Fidelity Industrial Credit Company of Ogden must also be sustained; since its alleged negligence in conveying plaintiff's cancellation of her deceased husband's surrender is immaterial, on the ground the beneficiary had no authority to take such action.

The claim of denial of adequate discovery is without merit here, and would have been had it been advanced to the trial court.

Costs to defendants.

HENRIOD, C. J., and ELLETT, CROCKETT and TUCKETT, JJ., concur.

---

5. See Anno: 15 A.L.A.3d 1317, 1321, Section 3.

6. At p. 179 of 94 Utah, at page 574 of 76 P.2d.

